**Billy E. MASDIN,
Petitioner-Cross-Respondent,**

v.

**GARDNER–DENVER–COOPER INDUSTRIES, INC., CNA Insurance Companies, Respondents-Cross-Petitioners,**

and

**The Industrial Commission of Colorado and The Division of Labor, State of Colorado, Respondents.**

Nos. 83CA1195, 83CA1240.

Colorado Court of Appeals, Div. IV.

July 19, 1984.

Rehearing Denied Aug. 16, 1984.

Douglas R. Phillips, Denver, for petitioner-cross-respondent.

Knapp & Lee, P.C., Robert A. Weinberger, Denver, for respondents-cross-petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, Asst. Atty. Gen., Denver, for respondents.

LEE, Justice.*

Claimant, Billy E. Masdin, seeks review of a final order of the Industrial Commission awarding him 25 percent permanent partial disability reduced by the amount of benefits to which he is entitled under an employer-funded disability retirement plan. Employer, Gardner-Denver-Cooper Industries, Inc., and insurer, CNA Insurance Companies, cross-petitioners, allege that the Commission erred in its determination that claimant suffered from a compensable occupational disease. We affirm in part and set aside the order in part.

On March 3, 1981, while deburring a piece of aluminum at work, claimant, who had been employed as a metal finisher for almost 30 years, experienced a sudden episode of acute respiratory distress. Claimant was subsequently diagnosed as suffering from chronic obstructive pulmonary disease (COPD).

At a hearing before the Division of Labor, evidence was presented that claimant, who was then 57 years old, had smoked between one and two and one-half packs of cigarettes daily since he was 14 or younger. One examining physician testified that the majority of claimant's disability was attributable to his years of smoking but that a "significant and unknown portion is attributable to his exposure [to irritants] at work."

A second examining physician testified that x-rays of claimant's lungs revealed changes usually associated with cigarette smoking, and that the type of particulates to which claimant was exposed at his workplace were not, in general, associated with the development of COPD. The physician stated that claimant's COPD would not have developed but for his smoking habit, but that work conditions may have aggravated or accelerated the course of the disease. The physician concluded that 75–85 percent of claimant's lung disease was due to cigarette smoking, and that 15–25 percent was attributable to other factors, including exposure in his job, air pollution, and exposure to dust while motorcycling.

The hearing officer found that claimant was totally and permanently disabled and that he had sustained an occupational disease which was responsible for 25 percent of his total disability. The hearing officer therefore awarded claimant 25 percent of the benefits to which he would have been entitled for permanent total disability. This award was reduced by the $223.22 per month amount to which claimant was entitled under an employer-funded disability insurance plan. By a supplemental order, the hearing officer amended the award to eliminate the $223.22 offset.

The Industrial Commission reversed in part, finding that the proper conclusion to be drawn from the hearing officer's findings of evidentiary fact and the record was that claimant had sustained a 25 percent permanent partial disability as a result of a work-induced aggravation of a nonoccupational disease. In addition, the Commission reinstated the $223.22 deduction for claimant's disability retirement benefits.

On review, claimant first contends that the Commission erred in failing to award him permanent total disability benefits. Cross-petitioners contend that the Commission erred in its determination that claimant sustained a compensable occupational disease. We disagree with both contentions.

■ Section 8–41–108(3), C.R.S. (1983 Cum.Supp.) defines an occupational disease as one:

* Sitting by assignment of the Chief Justice under provisions of the *Colo.Const.*, Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl.Vol.10).

"which results directly from the employment or the conditions under which work was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause and which does not come from a hazard to which the worker would have been equally exposed outside of the employment."

An occupational disease is present if employment conditions act upon an employee's pre-existing weakness or hypersensitivity so as to produce a disabling condition which would not have existed absent the employment conditions. *Denver v. Hansen*, 650 P.2d 1319 (Colo.App.1982).

Here, there was medical evidence that his work place exposure "cannot account for any major causative effect in the development of [claimant's] lung condition." Instead, the evidence established that claimant's work place exposure merely increased the severity of a condition which was primarily attributable to cigarette smoking and which was therefore not occupational in character.

▮ The issue of the compensability of a disability primarily caused by non-occupational factors but to which occupational factors have made some contribution is one of first impression in Colorado. In determining whether such cases are compensable, the controlling statute must be read as a whole in such a manner as to reveal the legislative intent underlying it, *R&F Enterprises, Inc. v. Board of County Commissioners*, 199 Colo. 137, 606 P.2d 64 (1980), and consideration must be given to the contemporaneous construction of the statute adopted by the administrative body charged with its enforcement. *Dodge v. Department of Social Services*, 657 P.2d 969 (Colo.App.1982).

▮ The major policy underlying the Workmen's Compensation Act is to compensate employees for any loss of income caused by the injurious conditions of their employment. *See Olson v. Public Service Co.*, 190 Colo. 512, 549 P.2d 780 (1976). Section 8–41–108(3), however, contains an expression of legislative intent that diseases resulting from any "hazard to which the worker would have been equally exposed outside of the employment" should not be compensable. In our view, the Commission struck the proper balance between these competing policies in awarding claimant compensation only to the extent that occupational factors contributed to his disability. We therefore hold that if, as here, there is no evidence that occupational exposure is a necessary precondition to development of the disease with which a claimant is afflicted then the claimant has sustained an occupational disease only to the extent that occupational conditions have contributed to the claimant's overall disability. Accordingly, the Commission's award of 25 percent permanent partial disability must be affirmed.

Claimant contends in addition that the Commission erred in offsetting claimant's disability retirement benefits against his workmen's compensation benefits. We agree.

Section 8–51–101(1)(d), C.R.S., provides for the reduction of permanent total disability payments by the amount of periodic disability benefits payable to the employee under an employer-funded pension plan. *See Myer v. State*, 162 Colo. 435, 428 P.2d 83 (1967). However, if the employer pension plan itself provides that benefits payable under the plan are reduced to the extent that the employee receives workmen's compensation benefits, the reduction specified in § 8–51–101(1)(d) does not apply. Section 8–51–101(1)(d)(II), C.R.S.

▮ Here, employer's pension plan provided for a reduction in the employee's benefits by "the entire amount of [the employee's] Public Disability Benefits." "Public Disability Benefits" are defined in the pension plan as including permanent disability payments under any workmen's compensation statute. Accordingly, the Commission erred in ordering that the award of permanent total disability pay-

ments be reduced by the amount of disability retirement benefits.

That portion of the order awarding 25 percent permanent partial disability is affirmed. That portion of the order permitting an offset against this award for disability retirement benefits is set aside, and the cause is remanded with instructions to enter a new order consistent with the views expressed herein.

VAN CISE and STERNBERG, JJ., concur.