COWIN & COMPANY and United States Fidelity & Guaranty Company, Petitioners,

v.

Maclovio MEDINA, The Industrial Claim Appeals Office of the State of Colorado, and Director, Division of Workers' Compensation, Respondents.

No. 91CA1400.

Colorado Court of Appeals, Div. IV.

Nov. 5, 1992.

Rehearing Denied Dec. 3, 1992.

Certiorari Denied Oct. 25, 1993.

Glasman, Jaynes & McBride, Ronald C. Jaynes, Christine A. McBride, Denver, for petitioners.

Heckman & O'Connor, P.C., Brett Steven Heckman, Vail, for respondent Maclovio Medina.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John D. Baird, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Director, Div. of Workers' Compensation.

Opinion by Judge CRISWELL.

Cowin & Company, who was the last employer for whom claimant, Maclovio Medina, worked in a mine, seeks review of an order of the Industrial Claim Appeals Office (Panel), which determined that claimant was permanently and totally disabled as a result of an occupational disease. Cowin asserts, first, that the evidence required the Panel to determine the extent to which claimant's disability resulted from a non-occupational condition and to reduce claimant's benefits proportional to the contribution made by that condition to his disability. Alternatively, Cowin asserts that, in order to recover any benefits for an occupational disease, claimant was required to prove that his disability "does not come from a hazard to which [he] would not have been equally exposed outside of the employment" and that claimant presented no evidence to sustain that burden. Because we conclude that Cowin bore the burden of proof upon this issue and that the Administrative Law Judge (ALJ) properly concluded that it did not fulfill that burden, we affirm the Panel's order.

The evidence presented to the ALJ was, with one possible exception, undisputed.

Claimant was a mine worker for most of his working life. In 1977, a physician's examination of claimant led the physician to "suspect" that claimant was suffering from high altitude pulmonary edema (mountain sickness). This is a disease, the cause of which is unknown, which affects the respiratory system. However, from the date of this first diagnosis until 1988, claimant suffered no respiratory symptoms and was, in fact, completely asymptomatic.

Claimant commenced working for Cowin in August 1988, and the evidence is that Cowin's mine was very poorly ventilated. As a result, claimant was exposed to welding fumes and to a spray containing metallic fibers. These two hazards caused claimant's lungs to burn and caused him to cough and produce black sputum.

In October 1988, claimant was hospitalized because of shortness of breath, persistent coughing, and chest pains. He was diagnosed as having bronchitis caused by the hazards encountered in Cowin's mine.

Later, although claimant attempted to engage in other types of physical employment, he was unable to do so. He was determined to be suffering from chronic obstructive pulmonary disease and unable to perform any sort of heavy work.

The ALJ found that, considering claimant's education and experience, the nature of his condition rendered him permanently totally disabled. In reaching this conclusion, the ALJ recognized that claimant's mountain sickness (which is, admittedly, a non-occupational disease, although its cause is unknown) contributed to his disability and that his occupational bronchitis did not directly aggravate this previous condition. Both diseases, however, are afflictions of the respiratory system and possess "overlapping" symptomatology.

Consequently, the ALJ concluded that the holding in *Masdin v. Gardner–Denver–Cooper Industries, Inc.*, 689 P.2d 714 (Colo.App.1984) would normally require that the compensation benefits due to claimant be reduced to the extent that claimant's mountain sickness contributed to his disability. However, the ALJ also concluded that the evidence was insufficient to allow such an apportionment to be made. Hence, the ALJ made no reduction in claimant's award for total disability.

In approving the ALJ's award, the Panel determined that the *Masdin* apportionment rule was inapplicable because, unlike the disability at issue in *Masdin*, which resulted from a single disease with two or more causes, claimant's disability results from two separate and independent diseases.

We affirm the Panel's result, but we do not adopt its rationale.

### I.

In *Masdin v. Gardner–Denver–Cooper Industries, Inc., supra,* 689 P.2d at 717, a division of this court adopted the rule that:

[I]f ... there is no evidence that occupational exposure is a necessary precondition to development of the disease with which a claimant is afflicted, then the

claimant has sustained an occupational disease *only to the extent* that occupational conditions have contributed to the claimant's overall disability. (emphasis supplied)

In that case, therefore, the court affirmed an award for permanent partial disability, although the claimant was admittedly totally disabled, because his respiratory disease was the result of two hazards—smoking and work irritants. The 25% permanent partial disability award approved by the court was based upon evidence establishing that that was the extent to which the employment irritants contributed to his disability.

Recently, another division of this court concluded that the *Masdin* rule has to be "reconciled" with the specific provisions of what is now § 8–40–201(14), C.R.S. (1992 Cum.Supp.). *Anderson v. Brinkhoff*, 839 P.2d 487 (Colo.App.1992) (*cert. granted* October 13, 1992).

Section 8–40–201(14), which defines the term "occupational disease," provides that, in order to be compensable, a disease must "not come from a hazard to which the worker would have been equally exposed outside of the employment." And, in *Hall v. Industrial Claim Appeals Office*, 757 P.2d 1132 (Colo.App.1988), this portion of the statute was interpreted to mean that, if any hazard encountered by the worker outside the worker's employment setting was at least an equal *contributor* to the employee's disease, no compensation can be awarded. The parties here have not challenged this meaning, and hence, we accept it for purposes of this opinion.

Under either the *Masdin* rule or under § 8–40–201(14), therefore, if two or more causes contribute to a diseased condition, it is necessary to determine the extent to which the non-industrial cause contributed to that condition. And, the issue presented here is whether it is the employer or the diseased employee who bears the burden of demonstrating that an apportionment is possible and, if so, the proper apportionment.

■ Cowin's argument that this is a burden which must be placed on a claimant is premised, in part, upon the observation that § 8–40–201(14) is a definitional statute that requires that an "occupational disease":

—result directly from employment conditions;

—follow as a natural incident of the work;

—result from an exposure occasioned by the employment;

—can fairly be traced to the employment as a proximate cause; and

—does not come from a hazard to which the worker would have been equally exposed outside of the employment.

It asserts, therefore, that a claimant has the burden of proving each of these elements, including the lack of equal exposure, in order to establish a prima facie right to benefits.

We agree that a claimant must establish the existence of a disease, that it was directly and proximately caused by claimant's employment or working conditions and resulted from exposure to a hazard presented by those conditions, and the extent of the resulting disability. For several reasons, however, we conclude that a claimant does not have the initial burden of establishing that there was no non-industrial contributor to the diseased condition or, if such a contributor exists, the extent of its contribution.

First, the statutory exclusion from the category of occupational diseases of those which result from an equal exposure to a hazard in a non-employment setting is an exception to the general rule of compensability. All of the other elements in the definition of occupational disease refer to the nexus between the employment hazards and the development of the disease. The existence of a non-industrial hazard to which a claimant has been equally exposed will, nevertheless, relieve an employer of responsibility for the disease even though employment hazards have directly contributed to its development.

■ Generally, the party relying upon a statutory exception has the burden of establishing the factual predicate for its application. *United States v. First City National Bank,* 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967); 2A N. Sutherland, *Statutes & Statutory Construction* § 47.11 at 165 (1992). *See Ziatz v. People,* 171 Colo. 58, 465 P.2d 406 (1970) (applying provisions of criminal statute); *Farmer v. Central Bancorporation, Inc.,* 761 P.2d 220 (Colo.App.1988) (applying rule without discussion).

Therefore, because the equal exposure provision provides an exception to the general rule of compensability, the rule relating to statutory exceptions would require Cowin to produce evidence establishing its applicability. *See Farmer v. Central Bancorporation, Inc., supra.*

■ Second, whether it is the *Masdin* rule or § 8–40–201(14) that is to be applied, it is typically true that the burden of proof rests upon the party asserting the affirmative of a proposition. Therefore, consideration should be given to which party would prevail in the absence of any evidence upon the subject; the burden is normally placed upon the adverse party. *Valley Tree Service v. Jimenez,* 787 P.2d 658 (Colo.App. 1990).

If the evidence in an occupational disease case established all of the definitional elements under § 8–40–201(14), but there was *no* evidence as to whether there was also a non-occupational cause of the disease, claimant would surely prevail, whether it be *Masdin* or the statute that is to be considered. This leads to the conclusion that it is the employer who must affirmatively rely upon the existence of such a hazard in order to defeat or reduce the claim for benefits.

Finally, we are convinced that considerations of public policy demand that the employer assume the burden of proof upon any issue of apportionment.

There are instances in which two or more injuries or two or more diseases collectively result in a single disability. While it may be clear that each causes, or contributes to, in some part, the overall disability, it may, nevertheless, be impossible to determine, with any reliable degree of medical probability, the extent to which each cause contributes. Thus, it may be medically impossible to attribute to any single cause a specific degree of responsibility for the worker's dysfunction.

In such circumstances, who should bear the burden of such medical imprecision? Should it be the employee who, but for the conditions found on the job, would suffer no, or a substantially reduced, disability? Or should it be the employer whose working conditions have admittedly caused harm to the employee?

A substantially identical problem has arisen in a related field of the law. There, it has been decreed that it is the party whose actions caused, at least in part, the injured party's disability who must suffer the consequences of an inability to apportion.

■ Hence, if a negligent tortfeasor's actions cause trauma to be superimposed upon a plaintiff's pre-existing condition, so that a single disability results, and no apportionment can be made between the extent to which the pre-existing condition contributed to the disability and the extent to which the trauma resulting from the tortfeasor's negligence played its part, the tortfeasor is responsible for the entire disability. *Newbury v. Vogel,* 151 Colo. 520, 379 P.2d 811 (1963). And, in such circumstances, the injured party does not have the burden of proving that that party's disability cannot be apportioned between the two causes; it is, rather, the tortfeasor's burden to prove that they can be. *Brittis v. Freemon,* 34 Colo.App. 348, 527 P.2d 1175 (1974).

■ This rule is consistent with the concept that an employer must take an employee as he finds him so that the employer is responsible for any increased disability resulting to an injured worker from a pre-existing weakened condition. *See Colorado Fuel & Iron Corp. v. Industrial Commission,* 152 Colo. 25, 380 P.2d 28 (1963);

*Seifried v. Industrial Commission,* 736 P.2d 1262 (Colo.App.1986).

Hence, the same considerations which require a tortfeasor to assume the burden of proving the ability to apportion responsibility between two or more causes of a disability likewise require the imposition upon a disabled worker's employer of the burden of proving the extent to which a non-occupational hazard has contributed to that worker's disability. And, a failure to sustain this burden will render inapplicable either the rule adopted in *Masdin* or the statutory disqualification.

## II.

■ We also conclude that, here, the ALJ was warranted in concluding that Cowin failed to present sufficient competent evidence to demonstrate that any specific apportionment between the admitted occupational disease and claimant's mountain sickness could be made.

The only evidence relating to this issue was the opinion of one physician that each condition contributed 50% to claimant's disability.

The ALJ, however, found such opinion to be unpersuasive, and the record supports that determination. The physician made clear that the opinion expressed was not based upon any medical probability, but was merely a "guess." Such evidence does not compel its acceptance.

Here, therefore, because Cowin failed to submit proper evidence of the extent to which claimant's disability was caused by his mountain sickness, it failed to establish a basis either for reducing or for denying the disability award granted to him.

Order affirmed.

JONES and DAVIDSON, JJ., concur.