COLORADO COURT OF APPEALS                                    **2017COA79**

Court of Appeals No. 16CA1375
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-972-492

Richard Hutchison,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado; Pine Country, Inc.,
d/b/a Pine Country Truck & Auto; and Pinnacol Assurance,

Respondents.

ORDER AFFIRMED

Division II
Opinion by JUDGE DAILEY
Plank*, J., concurs
Berger, J., specially concurs

Announced June 1, 2017

Withers Seidman Rice & Mueller, P.C., David B. Mueller, Grand Junction,
Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Harvey Flewelling, Grant Butterfield, Denver, Colorado, for Respondents Pine
Country, Inc. and Pinnacol Assurance

William J. Macdonald, Aurora, Colorado, for Amicus Curiae Workers'
Compensation Education Association

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    In this workers' compensation action, claimant, Richard Hutchison, challenges an order apportioning his benefits award. An administrative law judge (ALJ) determined that only one-third of claimant's injury was work-related. The Industrial Claim Appeals Office (Panel) affirmed the ALJ's decision. We conclude that claimant's benefits award was properly apportioned and therefore affirm the Panel's decision.

## I. Background

¶ 2    Claimant works as a trailer mechanic for Pine Country, Inc. (employer). With the exception of a nine-month period in 1997, claimant has worked for employer since 1990. Claimant explained that his work required that "[y]ou get on your knees, pull the tires off or get on your knees to get underneath the trailer or crawl around on the trailer putting screws in the deck." He estimated that he spends "half the time" on his knees while at work.

¶ 3    In 2012, claimant began experiencing right knee pain. He sought treatment from his personal physician, who referred him to an orthopedic specialist, Dr. Mitch Copeland, for further evaluation. Dr. Copeland diagnosed claimant with moderate to severe osteoarthritis of the right knee.

1

¶ 4     In August 2012, claimant told Dr. Copeland that he also had pain in his left knee that was "intermittent and worsening" and occurred "without any known injury." Claimant reported that this knee pain "began years ago, [but] worse[ned] in last 2 weeks." Dr. Copeland diagnosed severe osteoarthritis in claimant's left knee, as well.

¶ 5     Dr. Copeland injected Synvisc in both of claimant's knees, but claimant did not experience much pain relief. Dr. Copeland also prescribed unloader braces for claimant's knees.

¶ 6     In October 2014, when his symptoms worsened, claimant reported his knee pain to employer as a work-related occupational disease. Employer contested the claim on relatedness grounds. It bolstered its position with an independent medical examination conducted by Dr. J. Tashof Bernton. Dr. Bernton observed that claimant had "fairly diffuse osteoarthritis in many parts of his body. He is also overweight. These are independent predictors of osteoarthritis in the knee." He opined that claimant's work likely aggravated claimant's arthritic knees, but suggested that claimant's employment was not the cause of his arthritis:

> While it is clearly evident to and beyond a reasonable degree of medical probability that, given his independent risk factors for knee osteoarthritis, the patient would have had osteoarthritis of the knees if he were not in his current job, the occupational history repeated lifting and squatting over years is sufficient to meet the standard in the Colorado Workers' Compensation Treatment Guidelines for aggravation of this condition on a work-related basis.

He clarified that "to and beyond a reasonable degree of medical probability, the patient would have osteoarthritis of the knees whether or not he had his current job duties, although . . . those job duties aggravated the osteoarthritis."

¶ 7    Claimant retained an independent physician to examine him. That doctor, Dr. John Hughes, recognized that claimant's "weight, family history and idiopathic knee osteoarthritis are certainly independent risk factors for development of end stage osteoarthritis of the knees in a 55-year-old male." He went on to note that "[a]s a result of this consideration, I cannot state within a reasonable degree of medical probability that knee pain is a direct and proximate result of work-related occupational stresses and strains due to [claimant's] work as a mechanic for approximately 25 years." Nevertheless, Dr. Hughes stated that he did "believe that work tasks

have substantially contributed to and worsened [claimant's] bilateral knee osteoarthritis and other conditions. I believe his work is the proximate cause for his need for total knee arthroplasty [replacement] at this point in time."

¶ 8     With conflicting reports, claimant applied for a hearing on the issue of compensability. At the hearing, Dr. Bernton reiterated his opinion that "beyond a reasonable degree of medical probability, the osteoarthritis would be there and the need for treatment with or without the occupational activity." He also testified that claimant's work "was not a necessary precondition" to his knee condition. As he did in his report, Dr. Bernton acknowledged that claimant's work likely aggravated his knee condition, and he apportioned "approximately one-third" of claimant's condition "to the occupational exacerbation."

¶ 9     The ALJ found Dr. Bernton's opinions credible and persuasive. The ALJ found that Dr. Bernton and Dr. Hughes "agree[d] that [c]laimant's bilateral knee pain was not directly and proximately caused by [c]laimant's work, but that the cause is multi-factorial in nature." The ALJ credited Dr. Hughes' and Dr. Bernton's opinions that "independent risk factors" contributed to claimant's knee

problems, specifically identifying claimant's "weight, family history and idiopathic knee osteoarthritis." The ALJ was also persuaded that claimant's osteoarthritis "would more likely than not, have developed . . . regardless of whether or not claimant had a job or any occupational exposure." The ALJ therefore adopted Dr. Bernton's apportionment recommendation, attributing one-third of the cause of claimant's bilateral knee osteoarthritis to work-related factors, and ordered employer to pay for "33.33 percent of all medical benefits and any compensation awarded in this claim as a result of [c]laimant's work activities."

¶ 10    On review, the Panel held that the ALJ had properly apportioned claimant's benefits, and that the decision apportioning the benefits was supported by substantial evidence in the record. Claimant now appeals.

## II. Apportionment Under Section 8-42-104, C.R.S. 2016

¶ 11    Claimant contends that his knee condition arose from repetitive kneeling and crawling necessitated by his work as a trailer mechanic, rather than from a specific incident. He therefore sought coverage for an occupational disease, which is defined as:

> "Occupational disease" means a disease which results directly from the employment or the conditions under which work was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause and which does not come from a hazard to which the worker would have been equally exposed outside of the employment.

§ 8-40-201(14), C.R.S. 2016. "An occupational disease is present if employment conditions act upon an employee's pre-existing weakness or hypersensitivity so as to produce a disabling condition which would not have existed absent the employment conditions." *Masdin v. Gardner-Denver-Cooper Indus., Inc.*, 689 P.2d 714, 717 (Colo. App. 1984). *Masdin* recognized that occupational diseases may have both work-related and non-work-related causes, and that an employer may therefore be liable for only a portion of a claimant's occupational disease. *Id.* *Masdin* apportionment was adopted by the supreme court in *Anderson v. Brinkhoff*, 859 P.2d 819, 825 (Colo. 1993) ("We agree with the court of appeals in *Masdin*[.]").[1]

---

[1] We note that the Workers' Compensation Education Association (WCEA) has submitted an amicus brief in this case primarily

¶ 12    After *Anderson,* the legislature amended the apportionment statute to prohibit apportionment in certain circumstances. The current version of the statute — which was in effect when claimant filed his claim for coverage of his knee condition — provides: "An employee's temporary total disability, temporary partial disability, or medical benefits shall not be reduced based on a previous injury." § 8-42-104(3).[2]

¶ 13    The question we must answer, then, is whether claimant suffered a "previous injury" as that term is used in subsection (3). If so, then the statute would prohibit a reduction or apportionment

---

arguing that *Anderson* misinterpreted the definition of "occupational disease." However, because WCEA raises arguments that are not addressed by either party, we will not consider WCEA's contentions. *See Beaver Creek Prop. Owners Ass'n v. Bachelor Gulch Metro. Dist.,* 271 P.3d 578, 585 (Colo. App. 2011) (refusing to consider argument raised by amicus curiae that was not asserted by parties); *SZL, Inc. v. Indus. Claim Appeals Office,* 254 P.3d 1180, 1189 (Colo. App. 2011) (refusing to consider "extensive additional issues" raised by amicus curiae "because only the issues raised by the parties are properly before us").

[2] Section 8-42-104(4), C.R.S. 2016, expressly permits "reductions in recovery or apportionments allowed pursuant to the Colorado supreme court's decision in the case denominated *Anderson v. Brinkhoff,* 859 P.2d 819 (Colo. 1993)." However, that subsection applies exclusively to claims for "permanent total disability." Because claimant was seeking medical benefits only, subsection (4) is not at issue here.

of his medical benefits award "based on a previous injury." The Panel concluded, however, that claimant had not suffered a previous injury and that section 8-42-104(3)'s prohibition therefore did not apply.

¶ 14    Claimant contends that the Panel erred in applying *Anderson* apportionment to his claim. He argues that the express terms of section 8-42-104(3) prohibit apportionment here. In addition, he challenges the ALJ's application of *Anderson* apportionment to his claim, arguing that *Anderson* is distinguishable and apportionment under it is consequently unavailable. Specifically, he notes that unlike the claimant in *Anderson*, his knee condition was not "independently disabling before the industrial aggravation." We conclude that apportionment was proper in this case.

*A. The Statute Does Not Prohibit All Apportionment*

¶ 15    Whether section 8-42-104(3) prohibits apportionment is a matter of statutory interpretation, which we review de novo. *See Ray v. Indus. Claim Appeals Office*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006).

¶ 16    Section 8-42-104 does not define "previous injury." The general definitions of the Workers' Compensation Act of Colorado

8

(Act) broadly define "injury" to "include[] disability or death resulting from accident or occupational disease." § 8-40-201(2). This definition has remained unchanged since the Act's reenactment in 1990. "Previous" is not defined in the Act, but its dictionary definition is "going before in time or order," "prior to, before," Webster's Ninth New Collegiate Dictionary 933 (1989), or "going or existing before in time," Webster's Third New International Dictionary 1798 (2002).

¶ 17    "When we interpret a provision of the . . . Act, we give it its 'plain and ordinary meaning' if its language is clear." *Keel v. Indus. Claim Appeals Office*, 2016 COA 8, ¶ 30 (quoting *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo. 2004)). Injury is defined by the Act and "previous" has one clear dictionary definition. The phrase "previous injury" is consequently unambiguous: it means an accident causing injury or an occupational disease that occurred earlier in time to the claimant's claim.

¶ 18    In reaching its decision, the Panel implicitly applied the plain, ordinary meaning of "previous injury." The Panel noted that the occupational disease at issue here was "characterized as the

aggravation of osteoarthritis." In other words, because the claimant's knee condition was one ongoing disease with many causes, both work- and non-work- related, there was no separate "previous injury" as anticipated by section 8-42-104(3); it was instead one "injury" with multiple causes and not a "previous injury" because there was no onset of the occupational disease that occurred "before in time." The Panel therefore concluded that section 8-42-104(3)'s prohibition against apportionment for a "previous injury" did not apply.

¶ 19 We discern no error in the Panel's application of the definition of "previous injury." *Cf. Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174, 175 (Colo. App. 1998) (The Panel's interpretation will be set aside only "if it is inconsistent with the clear language of the statute or with the legislative intent."). Accordingly, neither the ALJ nor the Panel erred by concluding that section 8-42-104(3) did not prohibit apportionment in this case.

*B. ALJ and Panel Did Not Misapply* Anderson

¶ 20 Claimant next contends that apportioning his injury was improper because his knee condition was not disabling until his work aggravated it. He argues that his situation is distinguishable

10

from *Anderson* because, in *Anderson*, the claimant's condition manifested itself before work aggravated it. Specifically, he argues that unlike the claimant in *Anderson*, his occupational disease "was never independently disabling absent the job stressors."

¶ 21 In *Anderson*, a carpenter who was exposed to sawdust on jobsites for approximately fifteen years sought workers' compensation coverage for his disabling emphysema alleging that the sawdust exposure caused his disease. Evidence showed, though, that the carpenter had "a hereditary condition which causes progressive emphysema and associated heart problems." *Anderson*, 859 P.2d at 820. The carpenter also smoked cigarettes, "which further contributed to the progression of his disease." *Id.* An ALJ concluded that the disabled carpenter's "smoking and occupational dust exposures were co-equal aggravating factors in the acceleration of [his] severe emphysema." *Id.* at 821 (alteration in original). The supreme court upheld the ALJ's apportionment. Citing to *Masdin*, it held that "where there is no evidence that occupational exposure to a hazard is a necessary precondition to development of the disease, the claimant suffers from an

occupational disease only to the extent that the occupational exposure contributed to the disability." *Anderson*, 859 P.2d at 825.

¶ 22    Contrary to claimant's underlying presumption, *Anderson* does not require prior symptomology or limit apportionment to those injuries or illnesses that manifest themselves before a work-related exposure.  True, the claimant in *Anderson* appears to have experienced symptoms before he began working for the employer and therefore was not asymptomatic.  *Id.* at 820.  But, *Anderson*'s reliance on and adoption of the holding in *Masdin* confirms that the timing of a claimant's symptomology is not dispositive.  Unlike the claimant in *Anderson*, the *Masdin* claimant "experienced a sudden episode of acute respiratory distress" while at work.  *Masdin*, 689 P.2d at 716.  Nothing in that opinion suggests that the worker in *Masdin* experienced any symptoms of his disease before the "sudden" onset at work.  Thus, the factual distinction between *Anderson* and claimant that he identifies does not render *Anderson* inapposite.  We therefore reject claimant's assertion that apportionment here was improper because his injury arose "in concert with and in tandem with other 'risk factors.'"

12

¶ 23     We also reject claimant's assertion that *Anderson* prohibits ALJs from assigning any value to "genetic predisposition." Claimant argues that *Anderson* attributed fifty percent of the carpenter's emphysema to non-work-related smoking and fifty percent to his work-related sawdust exposure, but it did not apportion any of the claimant's illness to his genetic predisposition. *Anderson*, 859 P.2d at 821. He points to this as effectively a prohibition against assigning any apportionment to a predisposition or latent genetic make-up, arguing that the ALJ's apportionment of one-third of the cause of his knee condition to work-related aggravation and two-thirds to independent risk factors, including claimant's "weight, family history and idiopathic knee osteoarthritis," was improper and violated *Anderson*.

¶ 24     Essentially, claimant is arguing that employer was required to "take him as it finds him." But, this is a tort concept that does not perfectly translate to workers' compensation. *See Schafer v. Hoffman*, 831 P.2d 897, 900 (Colo. 1992) ("The negligent defendant is liable for the resulting harm even though the harm is increased by the particular plaintiff's condition at the time of the negligent conduct." (citing *Prosser and Keaton on the Law of Torts* § 43, at

291 (5th ed. 1984))); *see also* Restatement (Second) of Torts § 461 cmt. a (Am. Law Inst. 1965) ("A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act is negligent."). Workers' compensation, however, does not incorporate the notion of fault or negligence. Employers are liable for work-related injuries to their employees regardless of fault. *See* § 8-41-301(1), C.R.S. 2016.

¶ 25 Certainly, the ALJ in *Anderson* did not apportion any of the claimant's emphysema to his hereditary condition — he only apportioned claimant's smoking and work conditions as causes — but *Anderson* does not expressly prohibit apportionment of a genetic condition. And, even though *Anderson* did not apportion any of the cause of claimant's emphysema to his hereditary condition, other cases *have* reduced the employer's liability for an injury based on a pre-existing condition. Most notably, in *Duncan v. Industrial Claim Appeals Office*, 107 P.3d 999 (Colo. App. 2004), a division of this court rejected a claimant's contention that "apportionment of liability attributable to the natural aging process" was impermissible. *Id.* at 1001. The court instead held that "the fact that aging is a factor does not preclude apportionment." *Id.*

¶ 26    Claimant has cited to no authority that expressly precludes apportioning a claimant's pre-existing genetic condition or natural proclivities. And, as shown by *Duncan*, other divisions have in fact upheld the very type of apportionment claimant challenges. We therefore perceive no error in the ALJ's apportionment of two-thirds of claimant's condition to "independent factors," including his weight, family history, and pre-existing osteoarthritis.

## *III. Substantial Evidence Supports ALJ's Findings*

¶ 27    Having concluded that neither the ALJ nor the Panel violated the Act or *Anderson* by apportioning claimant's condition, we turn to claimant's contention that substantial evidence does not support the ALJ's finding apportioning only one-third of the liability for his injury to employer. He argues that this apportionment was based on speculation and was "violative of the apportionment principles." We disagree.

¶ 28    In general, we will uphold an ALJ's apportionment decision if it is supported by substantial evidence in the record. In reviewing *Duncan* and *Anderson,* it rapidly becomes clear that common to both opinions is the upholding of the ALJ's apportionment decision because each decision was supported by substantial evidence in the

15

record. *Anderson*, 859 P.2d at 825 ("Because this percentage is supported by the evidence, Anderson is entitled to an award based upon it."); *Duncan*, 107 P.3d at 1002 (upholding ALJ's apportionment of seventy-five percent of claimant's knee condition to pre-existing degenerative joint disease even though claimant's knee had been asymptomatic before the work aggravation "[i]n light of the medical opinion that claimant would need a right knee replacement"); *see also Res. One, LLC v. Indus. Claim Appeals Office*, 148 P.3d 287, 287-88 (Colo. App. 2006) (upholding an ALJ's refusal to apportion the claimant's pre-existing spinal condition and rejecting the employer's assertion that it was entitled to apportionment as a matter of law).

¶ 29    "Substantial evidence is that quantum of probative evidence which a rational fact-finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence." *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995). "When an ALJ's findings of fact are supported by substantial evidence, we are bound by them." *Paint Connection Plus v. Indus. Claim Appeals Office*, 240 P.3d 429, 431 (Colo. App. 2010); *see* § 8-43-308, C.R.S. 2016.

16

¶ 30     "We must also defer to the ALJ's credibility determinations and resolution of conflicts in the evidence, including the medical evidence." *City of Loveland Police Dep't v. Indus. Claim Appeals Office*, 141 P.3d 943, 950 (Colo. App. 2006). The weight to be given to the experts' testimony in this case "is a matter exclusively within the discretion of the [ALJ] as fact-finder." *Rockwell Int'l v. Turnbull*, 802 P.2d 1182, 1183 (Colo. App. 1990). "Further, we may not interfere with the ALJ's credibility determinations except in the extreme circumstance where the evidence credited is so overwhelmingly rebutted by hard, certain evidence that the ALJ would err as a matter of law in crediting it." *Arenas v. Indus. Claim Appeals Office*, 8 P.3d 558, 561 (Colo. App. 2000).

¶ 31     Here, Dr. Bernton testified and opined that "approximately one-third" of claimant's knee condition was caused by work-related factors. He also unequivocally stated that it was his opinion "beyond a reasonable degree of medical probability, [that] the osteoarthritis would be there and the need for treatment with or without the occupational activity." And Dr. Hughes, claimant's retained physician, corroborated Dr. Bernton's opinion that independent risk factors, including claimant's "weight, family

17

history and idiopathic knee osteoarthritis" contributed to his developing "end stage osteoarthritis of the knees." The ALJ found Dr. Bernton's opinion credible and persuasive and noted that Drs. Bernton's and Hughes' opinions overlapped with respect to the causes of claimant's disease. Because these credibility determinations are not "overwhelmingly rebutted by hard, certain evidence" to the contrary, we may not set them aside. *See id.*

¶ 32    Claimant nonetheless argues that the apportionment assigned by the ALJ was "speculative" and therefore "violative of the apportionment principles." As outlined above, however, Dr. Bernton unambiguously stated in both his report and his testimony that "approximately one-third of [claimant's] condition can be reasonably apportioned to the occupational exacerbation of his underlying condition and the other two-thirds of his condition can be apportioned to the other two risk factors which are present (osteoarthritis in multiple other sites and increased body mass index)." In our view, Dr. Bernton's statements were concrete, not speculative.

¶ 33    In contrast, in each of the cases claimant cites to support his assertion that "speculative" apportionment cannot be upheld, the

physicians admitted that their opinions were ambiguous, equivocal, assumptive, or based on mere guesswork. In the absence of concrete supporting statements, the physicians' opinions were deemed too speculative to support apportionment. *See Parrish v. Indus. Comm'n,* 151 Colo. 538, 541-42, 379 P.2d 384, 385-86 (1963) ("[I]t was not error for the commission to refuse to allocate any portion of claimant's 5% disability to any alleged prior back condition or injury" where there was "no evidence of what that percentage should be" and physician testified that "he was unable to tell how much of this injury was due to this accident and how much to any previous back injury or condition."); *Empire Oldsmobile, Inc. v. McLain,* 151 Colo. 510, 513, 516, 379 P.2d 402, 403, 405 (1963) (The physician's statement that an impairment rating was an "assumption" and that "[i]t would be very difficult . . . to give any accurate . . . rating" could not support the disability impairment rating where the rating was made "on an arbitrary basis of assumptions or guesses."); *Mathews v. Indus. Comm'n,* 144 Colo. 146, 149, 355 P.2d 300, 301 (1960) (physician's testimony that his apportionment recommendation was "somewhat arbitrary" showed his recommendation was "[m]ere conjecture" insufficient to support

19

apportionment).  We therefore reject claimant's argument that Dr. Bernton's opinions were "too speculative" to support apportionment.

¶ 34     Rather, we conclude that substantial evidence supports the ALJ's apportionment findings and hold that the Panel did not err when it declined to set aside the ALJ's order on this basis.  *See Anderson*, 859 P.2d at 825; *Paint Connection Plus*, 240 P.3d at 431; *Duncan*, 107 P.3d at 1002.

## IV.  Conclusion

¶ 35     The order is affirmed.

JUDGE PLANK concurs.

JUDGE BERGER specially concurs.

JUDGE BERGER, specially concurring.

¶ 36    I join the court's opinion.  I write separately only to address my concerns regarding apportionment of liability attributable to a claimant's genetic predisposition to a disease when the genetic predisposition has not actually resulted in the disease.[1]

¶ 37    The majority correctly observes that apportionment is permissible under some circumstances.  *See, e.g.,* § 8-42-104(3), C.R.S. 2016.[2]  An employer is statutorily responsible only for injuries and disabilities caused by work injury or industrial exposure.  *Anderson v. Brinkhoff*, 859 P.2d 819, 823 (Colo. 1993).  In *Anderson,* the Colorado Supreme Court held that because occupational diseases may have both work-related and non-work-

_____

[1]  According to the National Cancer Institute, a genetic predisposition is an "[i]ncreased likelihood or chance of developing a particular disease due to the presence of one or more gene mutations and/or a family history that indicates an increased risk of the disease."  *NCI Dictionary of Genetics Terms*, Nat'l Cancer Inst., https://perma.cc/MH99-WYKX; *see also What Does it Mean to Have a Genetic Predisposition to a Disease?*, U.S. Nat'l Library of Med., https://perma.cc/73BH-2XYZ.

[2]  Some states have rejected apportionment entirely in workers' compensation cases.  *See Sullins v. United Parcel Serv., Inc.,* 108 A.3d 1110, 1122 (Conn. 2015); *Stephens v. Winn-Dixie Stores, Inc.,* 201 So. 2d 731, 736-37 (Fla. 1967); *Newberg v. Armour Food Co.,* 834 S.W.2d 172, 175 (Ky. 1992); *Bond v. Rose Ribbon & Carbon Mfg. Co.,* 200 A.2d 322, 323-24 (N.J. 1964).

related causes, an employer may be liable for only a portion of a claimant's occupational disease.

¶ 38    I agree that apportionment was permissible under Colorado law in this case. Not only did the evidence support the administrative law judge's findings that the claimant's osteoarthritis in his knees was caused in part by the non-work-related factors of his weight and family history, at least one doctor identified pre-existing osteoarthritis in other parts of the claimant's body.

¶ 39    But apportionment of liability attributable to a person's mere likelihood of developing a disease, without more, is impermissible. Genetic predispositions are measured by statistical probabilities; for example, a woman or man who carries abnormalities in the BRCA1 or BRCA2 genes has a much greater chance of developing breast and ovarian cancer than a woman or man who does not carry those abnormalities.[3] *BRCA1 and BRCA2: Cancer Risk and Genetic Testing,* Nat'l Cancer Inst., https://perma.cc/U3W6-DH49; *What*

---

[3]  I am not speaking here of genetic disorders that invariably cause a disease or condition. I am speaking only of genetic predispositions, which, while they increase the statistical likelihood of disease, do not invariably lead to disease.

*Does it Mean to Have a Genetic Predisposition to a Disease?*, U.S. Nat'l Library of Med., https://perma.cc/73BH-2XYZ.

¶ 40    Genetic predispositions are not, however, certainties. If a person has a ninety percent statistical likelihood of developing a particular disease (an unusually high predisposition), that also means that any given person with that genetic makeup may be one of the lucky ten percent who never develops the disease. Without evidence that the person's predisposition to development of the disease has manifested itself in the disease, apportionment is inappropriate.

¶ 41    To permit apportionment under these circumstances would be fatally inconsistent with the workers' compensation principle that an employer takes the employee as it finds him or her. *Cowin & Co. v. Medina*, 860 P.2d 535 (Colo. App. 1992); *see* § 8-42-104(3) ("An employee's temporary total disability, temporary partial disability, or medical benefits shall not be reduced based on a previous injury."); *see also Stephens v. Winn-Dixie Stores, Inc.*, 201 So. 2d 731, 737 (Fla. 1967) ("[T]he theory of apportionment is diametrically opposite to the injunction that 'the employer takes the employee as he finds him.'"). Instead of taking the employee as the employer

23

finds her, it would do precisely the opposite by burdening an employee who may never develop the disease for which she has a predisposition and penalizing her for the existence of that family history or her genes.

¶ 42    The collateral ramifications of such apportionments are also troubling. If apportionments based solely on genetic predispositions were permissible, what would stop an employer from seeking and obtaining a blood draw from a claimant and having the blood tested for genetic disease markers? Most employees would find this degree of intrusion into their most personal affairs shocking. And, if the genetic test results are even remotely related to the claimed work-related injury or disease, the employer or its insurer almost certainly would seek apportionment.

¶ 43    Nothing in the Workers' Compensation Act of Colorado, nor any Colorado Supreme Court case, authorizes apportionment based on a genetic predisposition that has not resulted in the disease. In my view, nothing in the court's opinion should be read to authorize such an apportionment.