2023 UT App 31

# THE UTAH COURT OF APPEALS

DIRK W. BARKER,
Petitioner,

*v.*

LABOR COMMISSION, BURRELL MINING PRODUCTS, AND ZURICH
AMERICAN INSURANCE COMPANY OF ILLINOIS,
Respondents.

Opinion
No. 20220242-CA
Filed April 6, 2023

Original Proceeding in this Court

Virginius Dabney and Stony V. Olsen,
Attorneys for Petitioner

Bret A. Gardner and Kristy L. Bertelsen, Attorneys
for Respondents Burrell Mining Products and Zurich
American Insurance Company of Illinois

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     After being exposed to welding fumes, fly ash, cement, and foam concentrate at work for approximately twenty-five years, longtime cigarette smoker Dirk W. Barker was diagnosed with a chronic breathing disorder that prevented him from working. Barker sought and the Labor Commission approved his application for permanent total disability benefits, but the Labor Commission reduced those benefits by 75% based on its finding that his disorder was 75% attributable to non-industrial causes—i.e., his smoking. The Appeals Board (the Board) upheld that determination. We are asked to review the Board's interpretation of the relevant statute to determine whether it permits apportionment where a worker has only one disability but where

that disability results from a disease that has both industrial and non-industrial causes. We hold that, on the facts of this case, it does not, and therefore we set aside the Board's decision and remand for the Labor Commission to adjust its award accordingly.

BACKGROUND

¶2     Barker worked for Burrell Mining Products (Burrell) from 1991 to 2016. During that time, he was exposed to welding fumes, fly ash, cement, and foam concentrate. He also had a history of smoking and non-industrial secondhand smoke exposure. In 2017, Barker was diagnosed with "severe, *progressive*, end-stage COPD & emphysema" that was caused or aggravated by his work for Burrell.

¶3     As a result of his diagnosis, Barker sought permanent total disability workers' compensation benefits. In the course of discovery, Burrell requested that Barker be examined by a medical expert retained by its insurer. Barker refused to participate unless he could video and audio record the insurer's exam. Burrell filed a motion to compel, requesting that the administrative law judge (ALJ) require Barker to undergo the insurer's exam even without recording it. Barker responded that under rule 35 of the Utah Rules of Civil Procedure, he had the right to record the insurer's exam. This dispute continued for some time, involving numerous motions and petitions, including a petition for interlocutory review in this court, which we determined to be premature. The ALJ finally ordered Barker to participate in an insurer's exam without recording it. Ultimately, both sides did make audio recordings of the exam, but Barker was not allowed to make a video recording.

¶4     After resolving the insurer's exam issue, the ALJ held a hearing on Barker's benefits claim and referred the medical questions to a medical panel. The medical panel concluded that Barker's COPD with emphysema rendered him unable to work

and that this disease was the sole cause of his disability. In addition, the panel concluded that Barker's COPD was 25% attributable to his occupational exposure and 75% attributable to his smoking. Relying on the medical panel's conclusions, the ALJ found that Barker was permanently and totally disabled by his disease but apportioned his benefits at the rate of 25%.

¶5    Barker requested that the Board review the ALJ's decision, arguing that his award should not be apportioned. In a 2-1 decision, the Board upheld the ALJ's decision to apportion benefits. Barker now requests review of that decision.

ISSUES AND STANDARDS OF REVIEW

¶6    Barker raises two primary issues for our review: (1) whether he should have been permitted to make a video recording of the insurer's exam and (2) whether the Board correctly apportioned his award.[1] "Absent a grant of discretion, an agency's interpretation or application of statutory terms should be reviewed under the correction-of-error standard." *Barron v. Labor Comm'n*, 2012 UT App 80, ¶ 8, 274 P.3d 1016 (quotation simplified). When reviewing "an agency's interpretation of its own rules," we "defer[] to an agency's interpretation as long as it is both reasonable and rational." *Dorsey v. Department of Workforce Services*, 2012 UT App 364, ¶ 8, 294 P.3d 580 (quotation simplified).

ANALYSIS

I. Video Recording the Insurer's Exam

¶7    The Utah Administrative Procedures Act allows administrative agencies to create rules that "prescribe means of

---

1. Barker raises additional issues that we need not address in light of our ruling on the issues at hand.

discovery adequate to permit the parties to obtain all relevant information necessary to support their claims or defenses." Utah Code § 63G-4-205(1). But if an agency does not enact its own rules governing the discovery process, Utah law allows the parties to an administrative proceeding to "conduct discovery according to the Utah Rules of Civil Procedure." *Id.*; *accord* Utah Admin. Code R602-2-1(P) (providing that "[i]n formal adjudicative proceedings, the [Labor Commission's Division of Adjudication] shall generally follow the Utah Rules of Civil Procedure regarding discovery . . . except as the Utah Rules of Civil Procedure are modified by" evidentiary rules in the Workers' Compensation Act or the Utah Administrative Code).

¶8     Rule 35 of the Utah Rules of Civil Procedure, which governs defense-side medical examinations, allows them "only on motion for good cause shown." Utah R. Civ. P. 35(a). In addition, the rule contains a specific provision regarding a plaintiff's right to record the exam; that provision generally allows such recording, by either "audio or video," "unless the party requesting the examination shows that the recording would unduly interfere with the examination." *Id.*

¶9     The Labor Commission has enacted an administrative rule that, at least in part, governs medical examinations requested by employers or their insurers. That rule differs from rule 35 in that it allows employers, at their option, to "require the petitioner to submit to a medical examination by a physician of the [employer's] choice" and allows petitioners to be relieved from the requirement only if they can show that the employer's demand was unreasonable. *See* Utah Admin. Code R602-2-1(F)(3). But the administrative rule is silent on the subject of whether a petitioner may make an audio or video recording of the medical exam.

¶10    Burrell argues that the administrative rule entirely supersedes rule 35 by allowing an employer to require a claimant to submit to an insurer's exam and asserts that the administrative rule's silence regarding a claimant's right to record the exam

indicates that such recording is not allowed. Barker, on the other hand, asserts that the administrative rule modifies rule 35 only insofar as it gives the respondent the right to demand an exam without showing good cause, as would be required under rule 35. In particular, Barker maintains that because the administrative rule does not include its own provision pertaining to the recording of insurer exams, the recording portion of rule 35 steps into the breach and supplies the relevant rule.

¶11 We agree with Barker that the administrative rule's silence on the matter of whether a claimant may record an exam means that it does not supersede rule 35 on that point. As a general rule, a statute's or rule's silence on a subject does not constitute a conflict with another statute or rule that does address that subject. For example, in *Salt Lake City v. Newman*, 2006 UT 69, 148 P.3d 931, our supreme court considered whether a city ordinance conflicted with state law in such a way as to make the ordinance invalid. *Id.* ¶ 7. *See generally Hansen v. Eyre*, 2005 UT 29, ¶ 15, 116 P.3d 290 ("It is well established that, where a city ordinance is in conflict with a state statute, the ordinance is invalid at its inception."). The court explained that "the test" for whether a city ordinance conflicts with a state statute "is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa," *Newman*, 2006 UT 69, ¶ 7 (quotation simplified), and the court rejected the assertion that an "implied conflict" could exist where a city ordinance prohibited conduct that would not be prohibited under state law, *id.* ¶ 8; *accord Redwood Gym v. Salt Lake County Comm'n*, 624 P.2d 1138, 1144 (Utah 1981) (explaining that a conflict between a statute and an ordinance "is not created by the fact that an ordinance denounces as unlawful an act upon which state law is silent, or pronounces a penalty therefor"); *see also Reedeker v. Salisbury*, 952 P.2d 577, 585 (Utah Ct. App. 1998) (rejecting the assertion that the applicability of the Condominium Act to condominium associations precluded provisions of the Nonprofit Corporation and Co-Operative Association Act from applying with respect to matters on which the Condominium Act was silent). Similarly, in *McNair v. State*, 2014 UT App 127, 328 P.3d 874, a panel of this court held that rule 65C of the Utah Rules

of Civil Procedure, which governs post-conviction petitions, does not supersede other provisions of the rules with respect to matters on which it is silent. *Id.* ¶¶ 10–11. While these cases are not precisely on point, they support the general principle that a rule or statute does not preempt another applicable rule or statute unless it does so explicitly.

¶12 Here, the Administrative Procedures Act and the Labor Commission's own rules indicate that the Utah Rules of Civil Procedure are applicable to discovery issues in formal adjudicative proceedings unless they conflict with other applicable rules. And there is no explicit conflict between rule 35's recording provision and the administrative rules because the administrative rules are silent about the claimant's right to record an insurer's exam. Thus, rule 35 applies, and the ALJ erred in ordering Barker to undergo the insurer's exam without recording.

## II. Apportionment

¶13 Barker next argues that the Board erred in apportioning benefits among causes of his *disease* rather than causes of his *disability*. We agree.

### A.    Burden of Proof

¶14 As a threshold matter, the parties disagree as to who bears the burden of demonstrating that apportionment is appropriate. Burrell maintains that it is the employee's burden to prove that the apportionment statute does not apply, whereas Barker asserts that the onus is on the employer, as the proponent of apportionment, to demonstrate that apportionment is appropriate.

¶15 Employees bear the initial burden of proving their entitlement to permanent disability benefits. *See* Utah Code § 34A-2-413(1)(b). For purposes of the Occupational Disease Act, "a compensable occupational disease means any disease or illness that arises out of and in the course of employment and is

medically caused or aggravated by that employment." *Id.* § 34A-3-103. There is no dispute that Barker has met his burden to establish that he has a compensable occupational disease and is entitled to permanent total disability benefits. Indeed, Burrell agrees with Barker that Barker's work activities "medically caused or aggravated" Barker's COPD.

¶16 The Occupational Disease Act does not identify which party should bear the burden of proof when it comes to apportionment of benefits. *See id.* § 34A-3-110. However, we are convinced it is most reasonable to place that burden on the employer, as the proponent of the reduction. Other states with similar statutes have assigned the burden of proof to the employer for several reasons. First, apportionment is "an exception to the general rule of compensability," so once an employee has established entitlement to compensability, it should be the employer's burden to demonstrate that an exception applies. *See Cowin & Co. v. Medina*, 860 P.2d 535, 537–38 (Colo. App. 1992). Second, the employer should bear the burden of proof because it is the party that will benefit from a finding of apportionment. *See Deschenes v. Transco, Inc.*, 953 A.2d 13, 25 n.18 (Conn. 2008); *see also Cowin*, 860 P.2d at 538 (explaining that if an employee has established entitlement to compensation and there was no evidence of a non-occupational disease, then the default position would be no apportionment; the employer must therefore show the existence of a non-industrial disease for apportionment to be considered); *cf. Koesling v. Basamakis*, 539 P.2d 1043, 1046 (Utah 1975) (explaining that the "proponent of a proposition" generally has the burden of production and persuasion). Third, apportionment is comparable to the tort concept of comparative negligence, on which the defendant carries the burden of proof. *See Cowin*, 860 P.2d at 538–39. *See generally* 65A C.J.S. *Negligence* § 790 (March 2023 update) ("Comparative negligence is an affirmative defense, and the party asserting the defense bears the burden of proving that the negligence of the other party was a cause in fact of the accident."). And finally, public policy supports placing the burden of proof on the employer: issues of apportionment can be unusually complicated because of the

difficulty in attributing and apportioning disability among various causes, so it should be "the employer whose working conditions have admittedly caused harm to the employee" who should bear the burden of "medical imprecision" inherent in the apportionment analysis. *See Cowin*, 860 P.2d at 538; *cf. Walls v. Hodo Chevrolet Co.*, 302 So. 2d 862, 865–66 (Miss. 1974) (concluding that it was appropriate to place the burden on the employer to not only prove the existence of a pre-existing condition for purposes of apportionment but to present medical evidence that the pre-existing disease contributed to the employee's disability). For all these reasons, we agree with Barker that his employer bore the burden of demonstrating that apportionment was appropriate.

B.    The Apportionment Statute

¶17    The apportionment statute provides,

> The compensation payable under this chapter shall be reduced and limited to the proportion of the compensation that would be payable if the occupational disease were the sole cause of disability or death, as the occupational disease as a causative factor bears to all the causes of the disability or death when the occupational disease, or any part of the disease:
>
> (1) is causally related to employment with a non-Utah employer not subject to commission jurisdiction;
>
> (2) is of a character to which the employee may have had substantial exposure outside of employment or to which the general public is commonly exposed;
>
> (3) is aggravated by any other disease or infirmity not itself compensable; or

(4) when disability or death from any other cause not itself compensable is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease.

Utah Code § 34A-3-110.[2] Burrell did not identify in its argument before the Labor Commission which subsection or subsections it believed to be applicable in this case, and neither the ALJ's decision nor the Board's decision relied on any particular subsection. And even on appeal, Burrell has not articulated a specific theory under which it believes apportionment should be based. We therefore examine each of the four subsections of the apportionment statute to determine which, if any of them, might justify apportionment under the facts of this case.

¶18    "When interpreting statutes, we look first to the statute's plain language with the primary objective of giving effect to the

---

2. The apportionment statute is by no means a model of clarity. As we read them, the statute's initial few lines appear to be a loquacious way of saying that the principle of apportionment applies in any of the four circumstances outlined in subsections (1) through (4). In reviewing the phrase immediately preceding those subsections—"when the occupational disease, or any part of the disease"—we would typically expect to read that phrase as modifying all four subsections. However, the four subsections are not grammatically parallel. While the language of the first three subsections naturally follows from that phrase, the language of the fourth subsection stands apart. In fact, were we to read the phrase as modifying subsection (4), the resulting phrase would be nonsensical. The only way for the statute to make sense is if we apply the "when" phrase that precedes the list ("when the occupational disease, or any part of the disease") only to the first three items in the list and the second "when" phrase, beginning in subsection (4) ("when disability . . . from any other cause not itself compensable"), as modifying that subsection in place of the earlier "when" phrase. *See infra* ¶¶ 21–23.

legislature's intent." *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 46, 164 P.3d 384. "We also construe workers' compensation statutes liberally in favor of finding employee coverage." *Vigos v. Mountainland Builders, Inc.*, 2000 UT 2, ¶ 13, 993 P.2d 207 (quotation simplified); *see also Luckau v. Board of Review*, 840 P.2d 811, 815 (Utah Ct. App. 1992), *cert. denied*, 853 P.2d 897 (Utah 1993).

¶19 Barker asserts that the apportionment statute applies only where there are multiple diseases leading to a single *disability*, but not where there are multiple causes of a single *disease*. In making this argument, he relies persuasively on authority from other jurisdictions, as well as on *Larson's Workers' Compensation Law* treatise. These authorities have construed similar apportionment statutes as not "requiring apportionment where a disease producing a single disability is caused by both occupational and nonoccupational factors," *Burton v. Rockwell Int'l*, 967 P.2d 290, 295 (Kan. 1998), explaining that the statutes "require[] apportionment of disabilities, *not* apportionment of the different causes of a single disability," *see Fry's Food Stores of Arizona v. Industrial Comm'n*, 866 P.2d 1350, 1354 (Ariz. 1994). *See also Deschenes*, 953 A.2d at 26 ("[A]pportionment or reduction of permanent partial disability benefits is appropriate only in those cases wherein different diseases, one of which is occupational in nature, have combined to cause, in effect, two different disabilities, even if they ultimately affect the same bodily part or function."); *Kingery v. Ford Motor Co.*, 323 N.W.2d 318, 323 (Mich. Ct. App. 1982) (per curiam) (quoting with approval the workers' compensation appeals board's explanation that an employee's disability is "fully compensable" where "multiple *exposures* or *causes*, some compensable and others not compensable . . . , work together to cause a *disease* . . . , and that disease results in a *disability*"). In reviewing such cases from across the country, the Larson treatise concludes that—among those few states, including Utah, that employ apportionment in dual-causation cases—the "crucial distinction . . . is between apportioning disability and apportioning cause. The former is possible in the minority of states having apportionment statutes; the latter is never possible."

4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 52.06[4][d] (2014).[3]

¶20    While we find the reasoning of these authorities to be persuasive, we are ultimately bound by the language of Utah's apportionment statute. Considering that language, we agree with Barker that subsections (3) and (4)—which are similar to the statutes examined in the cited cases—apply only in the face of multiple causes of a *disability*. On the other hand, the language of subsections (1) and (2)—which subsections appear to be unique to Utah—indicate that those subsections can apply to multiple causes of a *disease*. Nevertheless, as we ultimately conclude that subsections (1) and (2) do not apply under the facts of this case, we agree with Barker that the Board erred in apportioning his compensation.

¶21    Subsection (1), by its plain language, unambiguously allows for apportionment where "employment with a non-Utah employer" causes "the occupational *disease*, or any part of the *disease*." *See* Utah Code § 34A-3-110(1) (emphasis added). Thus, if any part of a single disease is caused by a non-Utah employer, apportionment is appropriate. However, this subsection is clearly inapplicable to the case at hand, as Barker never worked for a non-Utah employer.

¶22    Subsection (2) allows for apportionment where "the occupational *disease*, or any part of the *disease* . . . is of a character

---

3. We observe that workers' compensation law in Utah has been developed, to no small degree, in reliance on the Larson treatise. Our supreme court has cited the treatise numerous times and adopted many principles directly from the treatise, including the "two-part causation test," *see Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986), the four-part test for determining whether an injury incurs in the scope of employment, *see Black v. McDonald's of Layton*, 733 P.2d 154, 156–57 (Utah 1987), and the "direct and natural result causal test," *see Washington County School Dist. v. Labor Comm'n*, 2015 UT 78, ¶¶ 28–29, 358 P.3d 1091, to name a few.

to which the employee may have had substantial exposure outside of employment or to which the general public is commonly exposed." *Id.* § 34A-3-110(2) (emphasis added). Like subsection (1), subsection (2) speaks in terms of a single disease and therefore conceivably allows apportionment among multiple causes of a single disease. However, only diseases of a particular "character" fall under this category. Burrell suggests that if a potential *cause* of a disease is such that "the employee may have had substantial exposure outside of employment or to which the general public is commonly exposed," *see id.*, then the disease must be considered under subsection (2). Here, Burrell argues that smoking and secondhand smoke meet this requirement and that apportionment of Barker's benefits is therefore appropriate under this subsection. But subsection (2) does not speak in terms of the *causes* of a disease. Instead, it speaks in terms of the *character* of the disease. We therefore read this subsection as requiring that the disease itself, rather than merely its potential causes, be one to which the person has substantial exposure outside their employment or to which the public is commonly exposed. An example of this would be a communicable disease, such as COVID-19. While it is conceivable that the legislature may have intended for subsection (2) to have broader applicability, the language chosen does not reflect such an intent. Moreover, reading this language narrowly comports with our directive to "construe workers' compensation statutes liberally in favor of finding employee coverage." *See Vigos*, 2000 UT 2, ¶ 13 (quotation simplified). As COPD with emphysema is not a disease "of a character" that the general public encounters, subsection (2) is not applicable under the facts of this case. *See* Utah Code § 34A-3-110(2).

¶23    While the language of subsections (1) and (2) contemplate apportionment in the face of only a single disease with multiple causes, we agree with Barker that subsections (3) and (4) apply only where a worker suffers from multiple diseases that both cause disability and that these subsections do not apply where a worker suffers from only one disease that causes disability (which disease may, in turn, have multiple causes). Subsection (3) applies

"when the occupational disease, or any part of the disease . . . is aggravated by any other disease or infirmity not itself compensable." *Id.* § 34A-3-110(3). Thus, to apportion benefits under subsection (3), the claimant must be the victim of at least two diseases. Subsection (4) applies "when disability . . . from any other cause not itself compensable is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease." *Id.* § 34A-3-110(4). Thus, to apportion benefits under subsection (4), the claimant's *disability*—as distinct from the occupational *disease*—must have more than one cause.

¶24    Here, Barker's disability is caused by only one disease: COPD with emphysema. There is no evidence that this disease was aggravated by any other disease or that any other disease contributed to Barker's disability. Accordingly, apportionment was not appropriate under either subsection (3) or subsection (4) of the apportionment statute.

CONCLUSION

¶25    Because administrative rules do not contradict the language of rule 35 of the Utah Rules of Civil Procedure that grants a right to record a medical exam, Barker should have been permitted to record the insurer's exam. Moreover, because Barker's disability was caused by only a single disease, and because the first two subsections of the apportionment statute are not factually applicable, apportionment was inappropriate here. We therefore set aside the Board's decision and remand with instructions that the Board award Barker his full permanent total disability benefits.

_____