Nos. 23–43, *David Duff, II v. Kanawha County Commission*.

Armstead, Chief Justice, concurring, in part, and dissenting, in part:

In this workers' compensation matter, the claims administrator, Workers' Compensation Board of Review ("BOR"), and the Intermediate Court of Appeals of West Virginia ("ICA"), entered consistent rulings, finding that Petitioner, David Duff, II ("Petitioner"), was entitled to a 13% permanent partial disability award for his compensable injury. These three consistent rulings were based on medical records and an expert medical opinion from Dr. Prasadarao Mukkamala, who examined Petitioner and found that he had a total whole person impairment of 25% for the lumbar spine. Dr. Mukkamala determined that 12% of Petitioner's whole person impairment should be apportioned due to Petitioner's preexisting degenerative spondyloarthropathy. As highlighted by the BOR and ICA, medical records establish that in the two years preceding Petitioner's compensable injury, he had experienced significant back pain and had received chiropractic treatment approximately thirty times during this period. In fact, medical records in this case demonstrate that Petitioner had been receiving treatment for lower back pain and stiffness since 1999. Because Dr. Mukkamala's expert medical opinion is supported by the medical evidence in the record, I believe the consistent conclusions of the claims administrator, BOR, and ICA were correct and that this Court should have affirmed the ICA's opinion.

The resolution of this case requires an examination of our apportionment statute, West Virginia Code § 23-4-9b (2003). It provides:

1

Where an employee has a definitely ascertainable impairment resulting from an occupational or a nonoccupational injury, disease, or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one [§23-3-1], article three of this chapter, the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment. Nothing in this section requires that the degree of the preexisting impairment be definitely ascertained or rated prior to the injury received in the course of and resulting from the employee's employment or that benefits must have been granted or paid for the preexisting impairment. *The degree of the preexisting impairment may be established at any time by competent medical or other evidence.* Notwithstanding the foregoing provisions of this section, if the definitely ascertainable preexisting impairment had not been rated, benefits for the impairment shall be payable to the claimant by or charged to the employer in whose employ the injury or disease occurred. The employee shall also receive the difference, if any, in the benefit rate applicable in the more recent claim and the prior claim.

(Emphasis added).

As an initial matter, I believe the majority has erred in its pronouncement of the burden of proof that the Respondent bore in this action. Without citing any language within West Virginia Code § 23-4-9b, or pointing to any controlling West Virginia statutory or common law authority, the majority's ruling places the burden on the employer to prove (1) that the claimant has a definitely ascertainable impairment resulting from a preexisting condition; (2) that the preexisting condition contributed to the claimant's overall impairment after the compensable injury; and (3) the precise degree of impairment

2

that is attributable to the preexisting condition. The majority's broad interpretation of West Virginia Code § 23-4-9b is inconsistent with the statute's plain language. There is no language in the statute placing the burden of establishing these three requirements on the employer. In fact, this reading of West Virginia Code § 23-4-9b is at odds with our long-standing recognition that "[w]e have traditionally held that a workers' compensation claimant has the burden of proving his or her claim by proper and satisfactory proof*.*" *Casdorph v. W. Va. Office Ins. Comm'r*, 225 W. Va. 94, 99, 690 S.E.2d 102, 107 (2009) (citation omitted). Moreover, the language of the statute itself belies the majority's interpretation. Specifically, West Virginia Code § 23-4-9b provides "the prior injury, and the effect of the prior injury, and an aggravation, ***shall not be taken into consideration*** in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded ***only in the amount that would have been allowable had the employee not had the preexisting impairment***." (Emphasis added). Instead of following the mandate of the statute that the prior injury or condition "shall not be taken into consideration," and *excluding* the effect of the prior injury or condition, the majority's holding presumes it is included in the amount of compensation allowed and places the burden on the employer to prove the negative and rebut such presumption. Moreover, the majority does not stop there. Instead, it places the burden on the employer to not only prove the existence of the prior injury or condition, but to also prove the "precise degree of impairment that is attributable to the preexisting condition." The statute clearly does not place such a burden on the employer.

3

Indeed, the majority is unable to cite any provision of the statute that imposes such a shift in the burden of proof. By placing this heavy burden on the employer in a case involving a preexisting impairment, the majority's interpretation of West Virginia Code § 23-4-9b could result in a claimant being relieved of the burden of proving their claim by "proper and satisfactory proof." *Casdorph*, 225 W. Va. at 99, 690 S.E.2d at 107. Instead, such claimant could be compensated for a preexisting injury due to the employer's failure to demonstrate the precise degree of impairment that is attributable to the preexisting impairment. We have long held that "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advoc. Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989). The majority has, under the guise of interpretation, significantly rewritten the language of West Virginia Code § 23-4-9b.

Unable to support, or even reconcile, its newly established pronouncement with any prior decisions of this Court, the majority relies only upon case law from other jurisdictions. Significantly, the primary case relied upon by the majority, *Barker v. Labor Comm'n,* 528 P.3d 1260 (Utah Ct. App.), *cert. denied*, 534 P.3d 751 (Utah 2023), interprets a workers' compensation statute that differs substantially from West Virginia's statute. Pursuant to West Virginia's workers compensation statute, we have held that "[i]n order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) *resulting from that employment*." Syl. Pt. 1, *Barnett v. State Workmen's Comp.*

4

*Comm'r,* 153 W.Va. 796, 172 S.E.2d 698 (1970) (emphasis added). Indeed, we have held that "[a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits ***merely because it may have been aggravated by a compensable injury***." Syl. Pt. 3, in part, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) (emphasis added). To the contrary, the Utah statute at issue in *Barker* provided that "[f]or purposes of the Occupational Disease Act, 'a compensable occupational disease means any disease or illness that arises out of and in the course of employment and is medically caused ***or aggravated by*** that employment.'" *Barker,* 528 P.3d at 1265 (emphasis added). Clearly a different apportionment method is justified where, as in Utah, the mere aggravation of a disease or illness is deemed compensable. However, the West Virginia worker's compensation statute does not permit the mere "aggravation" of an injury to constitute a compensable injury. Accordingly, the rationale adopted in *Barker* is inapplicable to the West Virginia apportionment statute.

Because the majority's interpretation of West Virginia Code § 23-4-9b is not supported by the plain language of the statute or by our long-standing recognition that a workers compensation claimant has the burden of proof, I disagree with the majority's ruling that the employer bears the burden to prove (1) that the claimant has a definitely ascertainable impairment resulting from a preexisting condition; (2) that the preexisting condition contributed to the claimant's overall impairment after the compensable injury; and (3) the precise degree of impairment that is attributable to the preexisting condition.

5

By shifting the burden to the employer, the majority is treating apportionment as an affirmative defense. West Virginia Code § 23-4-9b does not contain any language providing that apportionment should be treated as an affirmative defense that the employer is responsible for asserting. Indeed, the legislature knows how to set forth when affirmative defenses apply and has done so explicitly in a number of statutes. *See* W. Va. Code § 48-5-403(b), in part, ("[A]n allegedly guilty party who relies upon an affirmative defense must assert such defense by both pleadings and proof. *Affirmative defenses include* . . . condonation, connivance, collusion, recrimination, insanity and lapse of time.") (Emphasis added).[1] Unlike the foregoing, West Virginia Code § 23-4-9b does not include any specific mention that apportionment is an affirmative defense. Moreover, requiring the employer to assert apportionment as an affirmative defense is inconsistent with the clear requirement that the employee bears the burden to prove that the impairment resulted from his or her employment. *See Casdorph*, 225 W. Va. at 99, 690 S.E.2d at 107.

In the present case, however, even applying the onerous burden placed on the employer by the majority, competent medical evidence in the record demonstrates both the presence and degree of Petitioner's definitely ascertainable impairment. West Virginia

---

[1] *See also* W. Va. Code § 61-8B-12(a) ("(a) In any prosecution under this article in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, mentally defective, mentally incapacitated or physically helpless, *it is an affirmative defense that* the defendant at the time he or she engaged in the conduct constituting the offense did not know of the facts or conditions responsible for such incapacity to consent, unless the defendant is reckless in failing to know such facts or conditions.") (Emphasis added); W. Va. Code § 61-2-14g(b) ("In any prosecution under this section, *it is an affirmative defense that . . .*") (Emphasis added).

Code § 23-4-9b (2003) clearly states that "[t]he degree of the preexisting impairment may be established at any time *by competent medical or other evidence.*" (Emphasis added). The evidence adduced here established the impairment. Petitioner's compensable injury occurred on June 15, 2020. Treatment reports from McKinney Chiropractic between September of 2018 through June of 2020 demonstrate that Petitioner was experiencing ongoing back pain in the two years before his compensable injury. As the BOR noted, these records

> dated up to less than two months before the compensable injury, establish [an] almost [] two-year history of low back pain and treatment consisting of approximately 30 office visits. The records report a lumbar diagnosis and show a loss of [range of motion] due to the pre-existing back condition as evidenced by the treatment goal to improve and restore his [range of motion]. Thus, the records do establish a pre-existing back condition with a definite ascertainable functional impairment.

Further, as the ICA recognized in its opinion, *Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 882 S.E.2d 916 (Ct. App. 2022), Petitioner

> had a history of complaints of back pain going back 19 years before the injury involved in this case.
> . . . .
>
> Dr. McKinney performed chiropractic manipulations to Mr. Duff's spine, and diagnosed him with lumbar radiculopathy. The chiropractic records indicated on numerous occasions prior to the compensable injury that Mr. Duff's condition was complicated by degenerative disc disease and that the treatment goals for him included decreasing pain and restoring range of motion. In other words, Dr. McKinney's medical records are competent medical evidence substantiating Dr. Mukkamala's medical opinion.

7

*Id.* at 559-60, 882 S.E.2d at 925-26.

The majority does not dispute the ICA's conclusion that Petitioner had a long history of back pain or that he had been treated extensively for his back impairment at McKinney Chiropractic in the years prior to his compensable injury. However, the majority opinion finds that Respondent did not prove "the degree of impairment to be attributed to any preexisting condition for purposes of apportionment." In support of this ruling, the majority opinion asserts that Dr. Mukkamala's report was arbitrary because it did not include a detailed statement explaining his conclusion that 12% of Petitioner's injury should be apportioned to his preexisting degenerative spondyloarthropathy.

It is true that Dr. Mukkamala's report did not include a detailed statement explaining how he arrived at his apportionment conclusion. However, I disagree with the majority's finding that Dr. Mukkamala's entire report, therefore, lacks probative value. Instead, Dr. Mukkamala's report should be viewed alongside the competent medical evidence in this case. As previously discussed, the medical records are clear that Petitioner received treatment for preexisting back issues in the two years immediately prior to his compensable injury. These records also demonstrate that Petitioner's complaints of back pain predate the compensable injury by nineteen years.

Moreover, Dr. Mukkamala's report should be considered alongside the other expert medical opinions in the record. First, Dr. David Soulsby examined Petitioner and arrived at the same conclusion as Dr. Mukkamala: Petitioner had a 25% whole person impairment and 12% of that impairment was attributable to "the preexisting disease

8

process." Dr. Soulsby included a detailed statement in his report explaining why apportionment was necessary in this case:

> [Petitioner] has pre-existing spondyloarthropathy in the lumbar spine. The medical records reflect that this pre-existing condition was symptomatic and required medical treatment. Even if the pre-existing process was not previously symptomatic, it is expected that degenerative disc disease (a type of arthritis) will cause lost motion. Therefore, because the pre-existing process affects motion it contributes to the observed impairment and apportionment is required. In addition, the presence of degenerative disc disease increases the probability that a disc herniation will occur. There is a reasonable medical probability that the disc herniation in question would not have occurred in the absence of spondyloarthropathy.
>
> I documented the motion of the cervical spine which the claimant stated has never been injured or symptomatic. . . . [C]omparing this claimant's motion with known normal findings, it is obvious that his neck motion is decreased by approximately 30%.
>
> The cervical spine is not the lumbar spine. In claims involving the appendicular skeleton there is a contralateral side for comparison, i.e., an uninjured shoulder versus an injured shoulder. While this method has been established as a reasonable measure of pre-existing disease for the appendicular skeleton, it cannot be assumed that the cervical spine represents a reasonable approximation of the pre-existing disease in the lumbar spine. However, I believe the observed loss of motion in an asymptomatic region clearly demonstrates that apportionment is required and that Dr. Guberman's exclusion of apportionment is not based on sound medical reasoning.
>
> As previously noted, not only does pre-existing spondyloarthropathy contribute to the observed loss of motion, but this pre-existing disease was also a contributor in causation of the disc herniation itself. In my opinion, approximately 50% of the observed impairment should be apportioned to the pre-

9

existing disease process. I agree with Dr. Mukkamala and recommend a final rating of 13% WPI related to the injury in question.

Unlike Dr. Mukkamala and Dr. Soulsby, Dr. Guberman concluded that apportionment was not proper. However, as noted by the BOR:

Although Dr. Guberman disagreed with Dr. Mukkamala's apportioning, the evidence does establish a pre-existing lumber diagnosis and ROM [range of motion] loss of the lumbar spine. Further, Dr. Guberman reports no review of any records from McKinney Chiropractor. Thus, Dr. Guberman's opinion . . . is based upon incomplete evidence.

I agree with the BOR's reasoning and find that Dr. Guberman's opinion is of limited value. Further, while the BOR properly excluded Dr. Soulsby's report because it did not include a mandatory low back examination form,[2] it is nevertheless worth emphasizing that two of the three doctors who examined Petitioner found that 12% of his impairment should be attributed to his preexisting back impairment.

The clear weight of the medical evidence in the record demonstrates that Petitioner had a preexisting back impairment. Dr. Mukkamala's apportionment rating is supported by this medical evidence. Because the medical evidence in the record establishes Petitioner's preexisting back impairment, the majority's decision to disregard Dr. Mukkamala's report has produced a perplexing result: departing from the consistent findings of the claims administrator, BOR, and ICA despite the fact that the record plainly

_____

[2] *See* W. Va. C.S.R. § 85-20-66.2.

10

supports the conclusion that Petitioner had a significant preexisting back impairment, which was established by competent medical records.

Based on all of the foregoing, I respectfully dissent as to the majority's findings related to the burden of proof borne by the employer and the majority's conclusion that the ICA should be reversed.[3]

---

[3] I concur with the majority opinion's analysis and holding setting forth this Court's standard of review when considering an appeal of a workers' compensation ruling from the ICA.