

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2002

# Marcella Kosik v. Director OWCP

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Marcella Kosik v. Director OWCP" (2002). *2002 Decisions.* Paper 689.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/689

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-3176
_____

MARCELLA KOSIK
(Widow of GEORGE M. KOSIK),

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

_____

On Petition for Review of a Decision and Order of the
Benefits Review Board, United States Department of Labor
(BRB No. 00-0923 BLA)
_____

Argued March 7, 2002

Decided July 25, 2002

Petition for Panel Rehearing Granted and Opinion and Judgment Vacated
September 9, 2002

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 9, 2002

Before:  SCIRICA and COWEN, <u>Circuit</u> <u>Judges</u>, and
RESTANI, <u>Judge</u>, United States Court of International Trade*

(Filed October 29, 2002)

———————————————

OPINION OF THE COURT

———————————————

<u>PER CURIAM</u>.

This appeal arises from a Benefits Review Board's order that affirmed the decision of an administrative law judge ("ALJ") to deny Marcella Kosik's claim for survivor's benefits.  The ALJ denied Mrs. Kosik's claim under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 910-934, on the grounds that pneumoconiosis did not contribute to the death of her husband, George Kosik.

We will reverse.

**I.**

We have jurisdiction over this black lung benefits appeal under 30 U.S.C. § 932(a). <u>See</u> <u>Lukosevicz v. Director, OWCP</u>, 888 F.2d 1001, 1003 (3d Cir. 1989). We review the Board's decision for errors of law and to ensure the Board has adhered to its scope of review.  <u>See</u> <u>Oravitz v. Director, OWCP</u>, 843 F.2d 738, 739 (3d Cir. 1988).

———————————————

*The Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

2

Therefore, we must conduct an independent review of the record and "decide whether the ALJ's findings are supported by substantial evidence." Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 237 (3d Cir. 1979). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Kowalchick v. Director, OWCP, 983 F.2d 615, 620 (3d Cir. 1990) (internal quotation marks and citations omitted).

## II.

The ALJ and the Board set forth the background of the matter in their respective decisions, so we need not go into great detail here. In short, Kosik worked as a coal miner from 1943 until 1972 and as a carpenter from 1972 until his retirement in 1993 at age 65. As a result of his having worked in coal mines for twenty nine years, Kosik suffered from pneumoconiosis,[1] for which he received treatment from Drs. Lewis Druffner, Eugene Pelczar and Joseph Koval. Kosik was treated by Dr. Druffner for sixteen years and Dr. Pelczar for six years. Dr. Koval treated Kosik during Kosik's final hospitalization, which lasted from the time he suffered a stroke on November 13, 1996 until he died on November 23, 1996.

On March 4, 1998, Mrs. Kosik filed a claim for survivor's benefits under the Black Lung Benefits Act, asserting that coal worker's pneumoconiosis hastened her husband's death. All three of Kosik's treating physicians opined that after suffering the stroke,

---

[1]It is undisputed by the Department of Labor's medical expert, Dr. Perper, that Kosik had pneumoconiosis.

pneumoconiosis hastened Kosik's death. Dr. Joshua Perper, a non-treating physician retained by the Department of Labor to review the medical records and autopsy slides,[2] opined that Kosik's pneumoconiosis was too mild to have hastened his death. Dr. Perper concluded that "Kosik died of a massive cerebro-vascular incident (massive brain stem infarct) with terminal mild bronchopneumonia."

Based on Dr. Perper's opinion, the Administrative Law Judge denied Mrs. Kosik's claim for survivor's benefits after a December 16, 2000 hearing. See Kosik v. Director, OWCP, 1999-BLA-00235 (May 16, 2000) (App. 21A-32A). On June 15, 2001, the Benefits Review Board affirmed the ALJ's decision, concluding that it was supported by substantial evidence in the record. See Kosik v. Director, OWCP, BRB No. 00-0923 BLA (June 15, 2001) (App. 13A-20A).[3]

---

[2]At one point, Dr. Perper describes observing "unquestionable evidence" of pneumoconiosis in the autopsy slides.

[3]On July 25, 2002, we denied the petition for review and affirmed the decision of the Benefits Review Board. Kosik v. Dir., OWCP, No. 01-3176, 2002 U.S. App. LEXIS 14978, at *12 (3d Cir. July 25, 2002) (not precedential). Mrs. Kosik filed a petition for rehearing en banc, which was granted. Kosik v. Dir., OWCP, No. 01-3176, 2002 U.S. App. LEXIS 21121 (3d Cir. Sept. 9, 2002) (order). The prior opinion was vacated [, id.,] and the panel has reconsidered.

**III.**

The Black Lung Benefits Act is a remedial measure.  Lukosevicz v. Dir., OWCP, 888 F.2d 1001, 1006 (3d Cir. 1989).  Pneumoconiosis "is a serious and progressive pulmonary condition popularly known as 'black lung.'"  Mullins Coal Co. of Va. v. Dir., OWCP, 484 U.S. 135, 138 (1987).  It is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  30 U.S.C. § 902(b) (1986).  Pneumoconiosis that hastens death in any way qualifies as a substantial cause of death and dictates the award of benefits.  See Mancia v. Dir., OWCP, 130 F.3d 579, 585 (3d Cir. 1997).

The record contains uncontradicted evidence of a history of Kosik's shortness of breath[4] and pulmonary disease.  In 1983, thirteen years before his November 1996 hospitalization, Kosik suffered from shortness of breath upon exertion.  Dr. Pelczar,[5] who treated Kosik on a monthly basis from 1990 to 1996, stated that Kosik "was consistently short of breath" and as a result, he prescribed "Aminophylline 200 mg to be taken three times daily as needed."  Kosik underwent pulmonary function studies in 1990 and 1995.  These studies consistently showed abnormal results in pulmonary lung restriction,

---

[4]Kosik's widow and son documented Kosik's shortness of breath and consistent breathing problems through lay testimony at the administrative hearing.  While not sworn in as an expert, Kosik's son is an osteopath, board-certified in internal medicine.

[5]Dr. Pelzcar has served as an "impartial physician for the State of Pennsylvania for determinations regarding anthrasilicosis since 1962."

demonstrating restrictive lung disease.[6]  Kosik had a weakened pulmonary reserve before he had the stroke in 1996.

Kosik was admitted to the hospital on November 13, 1996, following "the abrupt onset of unresponsiveness."  The next day, "[i]ncreased respiratory secretions occurred requiring suctioning."  On November 19, "there was an abrupt deterioration in his respiratory status and he was intubated and placed on a ventilator and returned to the Intensive Care Unit."  On November 21, the family decided not to pursue aggressive measures, and Kosik died two days later on November 23, 1996.

The autopsy of Kosik's lungs revealed "thick mucus" as well as "marked anthracoctic markings" and "silica crystals" consistent with "simple coal worker's pneumoconiosis."  The discharge summary listed "1. Brain Stem Infarct  2. Acute Respiratory Failure 3. Chronic Obstructive Pulmonary Disease Secondary to Anthracosilicosis  4. Arteriosclerotic Cardiovascular Disease 5. Diabetes Mellitus, Recent Onset, Type I" as the final diagnosis. Kosik's treating physicians established a nexus between Kosik's lung capacity as they observed it through physical examination and clinical studies, and his capacity to survive after suffering a stroke that impacted his lungs.  Dr. Koval, who examined and treated Kosik during his final days, concluded,

---

[6]Dr. Perper found unpersuasive the pulmonary function studies stating that the results do not qualify as totally disabling.  But this is an irrelevant standard in this appeal.  Here, the issue is whether Kosik's pneumoconiosis hastened his death in any way.  Pulmonary function studies that show restrictive pulmonary disease before the stroke are highly probative.

[B]ased on my physical examination and in hospital care of Mr. Kosik, as well as my review of the autopsy findings, that anthrasilicosis directly contributed to, and hastened his death. Patients with anthrasilicosis which causes chronic obstructive pulmonary disease, cannot cough effectively and therefore cannot effectively clear their pulmonary secretions. The end result is death due to respiratory failure. This is exactly what happened to Mr. Kosik in the period after he suffered his stroke.

The ALJ largely based its decision on Dr. Perper's expert opinion. As noted, Dr. Perper concluded that Kosik's pneumoconiosis was too mild to hasten Kosik's death. Although Dr. Perper's opinion was otherwise comprehensive, he did not explain this conclusion nor discuss Kosik's pre-existing lung restrictions and his weakened pulmonary reserve in relation to the secretions in his lungs which necessitated suctioning, intubation and mechanical ventilation. This is particularly troubling because all three treating physicians came to a different conclusion than Dr. Perper.[7] Furthermore, there was insufficient evidence in the record to counter the medical opinions that Kosik's death was hastened by his pneumoconiosis and that he did not die solely as the result of a brain stem

---

[7]A treating physician's opinion does not per se trump that of a non-treating physician. But a non-treating doctor's opinion must be well supported and reasoned. A conclusory medical opinion will not suffice. See Mancia, 130 F.3d at 591 ("Although there may be situations where the nature of a non-treating physician's report is sufficient, in context with all the other evidence in the case, to support a conclusion that is contrary to the opinion of a treating physician, this is not such a case."); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) ("While the [Board] is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence.").

infarct.[8]  Viewing the record as a whole, the grounds cited in support of the ALJ's

conclusion do not amount to substantial evidence.

We have noted that "courts have repeatedly recognized that the remedial nature of

the statute requires a liberal construction of the Black Lung entitlement program to ensure

widespread benefits to miners and their dependents."  Keating v. Dir., OWCP, 71 F.3d 1118

(3d Cir. 1995) (citation omitted).  Kosik worked in the coal mines for nearly three decades

and developed pneumoconiosis.  "[C]oal workers' pneumoconiosis . . . is a dreadful and

insidious disease which interferes with the respiratory functions of its victims, and which

slowly and progressively makes the very act of breathing more and more difficult."  Curse v.

Dir., OWCP, 843 F.2d 456, 457 (11th Cir. 1988) (quoting 124 Cong. Rec. S2,333 (daily

ed. Feb. 6, 1978) (statement of Sen. Williams)).

Kosik experienced more than a decade of breathing problems before his death.

Kosik's spouse, physician-son, Dr. Druffner, Dr. Pelczar and Dr. Koval all observed

increased breathing problems up to the time of Kosik's death.  Kosik's pulmonary function

studies revealed restrictive lung disease.  After suffering a stroke, Kosik's lungs eventually

filled with mucus that could not be cleared without suctioning, intubation and mechanical

---

[8]See Lango v. Dir., OWCP, 104 F.3d 573, 576 (3d Cir. 1997) ("In Lukosevicz v. Dir., OWCP, 888 F.2d 1001 (3d Cir. 1989), this court considered the meaning of the regulatory phrase a 'substantially contributing cause or factor.'  After surveying the legislative history of the 1981 Black Lung Benefits Amendments, we held that pneumoconiosis is a substantially contributing cause whenever it actually hastens a miner's death even if a disease unrelated to pneumoconiosis played a role as well.  Id. at 1006.  Thus, we concluded that even if pneumoconiosis hastened by only a few days a miner's death from pancreatic cancer, there was a basis to award benefits.")

ventilation.  The physicians that examined, tested and treated Kosik while he was alive concluded that his pneumoconiosis hastened his death.  By contrast, Dr. Perper's conclusion to the contrary is insufficiently explained or supported by the record.

## IV.

For these reasons, we find that the ALJ's decision was not supported by substantial evidence in the record.  We will reverse the Board's order that affirmed the ALJ's denial of survivor benefits and remand for the limited purpose of awarding survivor's benefits.