IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

FILED

April 22, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 23-43
_____

DAVID DUFF, II,
Petitioner,

v.

KANAWHA COUNTY COMMISSION,
Respondent.

_____

Appeal from the Intermediate Court of Appeals of West Virginia
No. 22-ICA-10
Judicial Claim No. 2021000317
REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 9, 2024
Filed: April 22, 2024

William B. Gerwig, III, Esq.                    H. Dill Battle, III, Esq.
Charleston, West Virginia                       Charity K. Lawrence, Esq.
Counsel for the Petitioner                      Spillman Thomas & Battle, PLLC
                                                Charleston, West Virginia
                                                Counsel for the Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD concurs in part, and dissents in part, and reserves the right
to file a separate opinion.

JUSTICE WALKER concurs and reserves the right to file a concurring opinion.

JUSTICE BUNN concurs in part, and dissents in part, and reserves the right to file a separate opinion.

# SYLLABUS OF THE COURT

1.      It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law.

2.      Upon judicial review of an appeal of a decision of the West Virginia Board of Review to the Intermediate Court of Appeals of West Virginia, under West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022):

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

3.      On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme

Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.

4. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

5. "When a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed." Syllabus Point 1, *Jarrell v. State Workmen's Compensation Commissioner*, 152 W. Va. 418, 163 S.E.2d 798 (1968).

6. Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

**HUTCHISON, Justice:**

When an employee is injured in the course of and resulting from his or her covered employment, the employee is ordinarily entitled to workers' compensation benefits to compensate him or her for the disability related to the work-related injury. Sometimes, though, the employee has a preexisting condition unrelated to the work injury that will contribute to the employee's overall disability. Generally, the employer becomes liable for the entire disability resulting from a compensable accident under the "full responsibility rule." Some states, though, have enacted so-called apportionment statutes which do away with the full responsibility rule. These statutes are meant to separate out a preexisting disability from the disability arising from the current compensable injury and impose upon employers the duty to "compensate injured workers only for that portion of their permanent disability attributable to a current industrial injury, not for that portion attributable to previous injuries or to nonindustrial factors." *Brodie v. Work. Comp. Appeals Bd.*, 156 P.3d 1100, 1104 (Cal. 2007). West Virginia has adopted an apportionment statute and codified it at West Virginia Code § 23-4-9b (2003).

The Petitioner, David Duff II, was injured on the job. He applied for workers' compensation benefits and the workers' compensation carrier for the Respondent, the Kanawha County Commission, ultimately awarded the Petitioner a 13% Permanent Partial Disability (PPD) award. This award was based upon a medical report that, while finding the Petitioner had a 25% whole person impairment, apportioned 12% of the whole person

1

impairment to an alleged preexisting condition.[1] The Petitioner then protested that 13% PPD award to the West Virginia Workers' Compensation Board of Review (BOR) where he produced a medical evaluation showing he was entitled a full 25% PPD award as no apportionment was indicated. The BOR affirmed the 13% PPD award finding that "[t]he evidence on [sic] record indicated that apportionment should occur and is proper." The Petitioner appealed to the Intermediate Court of Appeals of West Virginia (ICA) arguing that apportionment was not proper in his case. The ICA disagreed and affirmed the BOR. *Duff v. Kanawha County Comm'n*, 247 W. Va. 550, 882 S.E.2d 916 (Ct. App. 2022). The Petitioner now appeals the ICA's judgment to this Court.

After reviewing the parties' briefs and appendix records, consulting pertinent authority, and considering the parties' oral arguments in this Court, we conclude the ICA erred in affirming the BOR. We therefore, reverse the ICA's decision and remand this case to the BOR with directions.

## I. Facts and Procedural Background

The Petitioner was a Kanawha County Deputy Sheriff in the Department's bomb squad on June 15, 2020, when he injured his back lifting a bomb detector robot out

---

[1]Although the terms impairment and disability are technically distinct, under West Virginia Code § 23-4-6(i) (2005), the terms impairment and disability are functionally synonymous since "[o]nce the degree of medical impairment has been determined that degree of impairment shall be the degree of permanent partial disability that shall be awarded to the claimant."

of the back of a truck. The Respondent's workers' compensation insurer claims examiner found the injury compensable. On September 24, 2020, the claims' examiner authorized lumbar interbody fusion surgery for the Petitioner. Robert Crow, M.D., performed a successful L3-L4 posterior lumbar interbody fusion on the Petitioner.

After the Petitioner underwent surgery, the claims examiner referred the Petitioner to Prasadarao Mukkamala, M.D. for an independent medical evaluation. In his report, Dr. Mukkamala indicated that he reviewed office records from McKinney Family Chiropractic dated July 1 to October 21, 2020, a lumbar spine MRI dated July 14, 2020, office records from West Virginia OrthoNeuro (Dr. Crow's medical practice) dated August 5, 2020, through March 19, 2021, as well as "[m]ultiple physical therapy records[.]" Dr. Mukkamala concluded in his report that the Petitioner "has reached [the] maximum degree of medical improvement from the compensable injury dated 6/15/2020."

Based upon the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) (*AMA Guides*), Dr. Mukkamala opined that the Petitioner had a total whole person impairment of 25% for the lumbar spine. Dr. Mukkamala apportioned 12% to pre-existing degenerative spondyloarthropathy and 13% to the compensable injury. The entirety of Dr. Mukkamala's apportionment decision contained in his report was:

> Please note that the 25% whole person Impairment is resulting
> from the preexisting degenerative spondyloarthropathy as well
> as the compensable injury of 6/15/2020.

3

> I will apportion Impairment and allocate 12% to the preexisting degenerative spondyloarthropathy and 13% to the compensable injury of 6/15/2020.

Based upon Dr. Mukkamala's report, the claims examiner awarded the Petitioner a 13% PPD award. The Petitioner protested to the BOR and his counsel arranged for the Petitioner to be examined by Bruce Guberman, M.D. Dr. Guberman's report related, among other things, that the Petitioner unsuccessfully received chiropractic treatment from McKinney Chiropractic commencing on July 1, 2020. Dr. Guberman's report also reflected that the Petitioner told him that before his injury he had had occasional lower back pain. He also informed Dr. Guberman that he had been seeing Dr. McKinney intermittently after joining the Sheriff's Department and that Dr. McKinney offered discounts to law enforcement officers. The Petitioner relayed to Dr. Guberman that his treatment was primarily massage due to tightness in his muscles from wearing a 20-pound gun belt, which he experienced about once a week. The Petitioner also told Dr. Guberman that before his injury the pain never radiated into his legs, and he has never had numbness, tingling, or weakness in his legs.

Dr. Guberman opined that the Petitioner had reached maximum medical improvement with 12% whole person impairment for the lumbar spine. He also rated 14% whole person impairment for range of motion abnormalities of the lumbar spine. Another 1% whole person impairment was found for sensory abnormalities of the lower extremities. Dr. Guberman then combined the 14% rating for range of motion abnormalities with the

4

12% whole person impairment from Table 75 of the *AMA Guides* by the Combined Values Chart to arrive at a total of 25% whole person impairment. Dr. Guberman opined the entire impairment should be apportioned to the June 15, 2020, injury. He further opined that although the Petitioner had imaging studies that revealed evidence of degenerative joint and disc disease of the lumbar spine which was present before the injury, he would not have qualified for an impairment rating using either the Range of Motion Model or Table 85-20-C before the current injury. Dr. Guberman stated that the Petitioner's occasional lumbar spine pain did not radiate into his legs, and he did not have numbness, tingling, or weakness in his legs due to low back pain before his work injury. Dr. Guberman opined that the Petitioner's pre-injury low back pain was only intermittent and did not cause ongoing significant interference with his activities of daily living, functional limitations, or interference at work. As such, Dr. Guberman did not believe that there was an objective medical, logical rationale for determining that any specific portion of the Petitioner's impairment should be apportioned to any preexisting conditions. Consequently, Dr. Guberman apportioned the Petitioner's entire 25% whole person impairment rating to the work-related injury.

Subsequently, the Respondent's counsel arranged for another medical evaluation to be performed on the Petitioner by David L. Soulsby, M.D. Dr. Soulsby found that the Petitioner had a 25% whole person impairment and agreed with Dr. Mukkamala that 12% of the impairment had to be apportioned to a pre-existing disease process for a

13% whole person impairment. Dr. Soulsby, however, did not attach a low back examination form to his report.

During the BOR proceedings, the Respondent submitted the Petitioner's chiropractic records from McKinney Chiropractic dated September 26, 2018, to June 23, 2020. These records reflected that the Petitioner had lower back pain and stiffness from the time he began working in 1999. The chiropractic records reflected a diagnosis of segmental and somatic dysfunction of the lumbar, cervical, thoracic, sacral, and sacrococcygeal region. The short-term goals of the chiropractic treatment were to improve thoracolumbar range of motion by 50%, decrease pain, restore range of motion, and improve the Petitioner's activities of daily living without pain.

The BOR affirmed the 13% PPD award by order of July 26, 2022. The BOR disregarded Dr. Soulsby's report as it did not include a low back examination form as mandated by W. Va. C.S.R. § 85-20-66.2 (2006) ("A report and opinion submitted regarding the degree of permanent whole body medical impairment as a result of a back injury without a completed back examination form shall be disregarded."). It then addressed the disparity between Dr. Mukkamala's report and Dr. Guberman's report as to apportionment and concluded that "[t]he evidence on [sic] record indicates that apportionment should occur and is proper."

6

In accepting Dr. Mukkamala's report over that of Dr. Guberman, the BOR relied on the medical records submitted, including chiropractic records from Dr. McKinney predating June 15, 2020, (chiropractic records that neither Dr. Mukkamala nor Dr. Guberman reviewed for their reports, *Duff*, 247 W. Va. at 559 n.10, 882 S.E.2d at 925 n.10), and MRI imaging.

The BOR believed that these records established a pre-existing back condition with a definite ascertainable functional impairment because the records

> dated up to less than two months before the compensable injury, establish almost a two-year history of low back pain and treatment consisting of approximately 30 office visits. The records report a lumbar diagnosis and show a loss of [range of motion] due to the pre-existing back condition as evidenced by the treatment goal to improve and restore his [range of motion]. Thus, the records do establish a pre-existing back condition with a definite ascertainable functional impairment.

The BOR concluded that the evidence established a pre-existing lumbar diagnosis and range of motion loss of the lumbar spine. The BOR stated that Dr. Guberman did not report a review of any records from Dr. McKinney, the chiropractor, and concluded that Dr. Guberman's opinion t that the Petitioner would not have qualified for an impairment before the June 15, 2020, injury was based upon incomplete evidence.

7

The BOR then rejected the Petitioner's claim that he was entitled to a 25% PPD award, because he still would have been placed in a lumbar Category V for the authorized fusion despite any pre-existing back conditions or range of motion.

Finally, the BOR addressed the claim that Dr. Mukkamala's 50-50 apportionment was arbitrary. "[N]o medical opinion in which apportionment occurs has been submitted that refutes Dr. Mukkamala's amount of apportionment. Whereas it has been determined that apportionment is to occur, Dr. Mukkamala's report is most in accordance with the evidentiary record."

The Petitioner then appealed to the ICA which affirmed the BOR's decision. *Duff,* 247 W. Va. at 53, 882 S.E.2d at 19.

The Petitioner timely appealed from the ICA to this Court. We now reverse the ICA's decision.

## II. Standard of Review

At this point in our opinion, we address the standard of review governing this appeal.

8

Both parties look to West Virginia Code § 23-5-15 (2021) as providing the standard of review governing this appeal.[2] We disagree.[3]

---

[2]West Virginia Code § 23-5-15 provided for the following standard of review before July 1, 2022:

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions, in accordance with subsections (d) and (e) of this section.

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the

Under West Virginia Code § 23-5-15(a), "[a]s provided in § 23-5-8b of this code, the provisions of this section do not apply to any decision issued by the Workers' Compensation Board of Review after June 30, 2022." "'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Martin v. Randolph County Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Since the decision in this case was rendered by the BOR on July 26, 2022, West Virginia Code § 23-5-15 cannot apply to this case. Nevertheless, we can discern an appropriate standard of review from pertinent Code provisions relating to the ICA and this Court's precedents.

We begin by observing that the Legislature has crafted a standard of review for the ICA to apply to BOR appeals. West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022) provides, in pertinent part:

decision. The court may not conduct a de novo reweighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision.

[3] Because this Court and "not the parties, must determine the standard of review[,]" *Worth v. Tyer*, 276 F.3d 249, 263 n.4 (7th Cir. 2001), "we are not bound by the parties' position on the standard of review[.]" *State v. Brewer*, 882 S.E.2d 156, 160 n.1 (S.C. 2022).

10

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Worker' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

     (1) In violation of statutory provisions;

     (2) In excess of the statutory authority or jurisdiction of the Board of Review;

     (3) Made upon unlawful procedures;

     (4) Affected by other error of law;

     (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

     (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

This is practically identical to the standard of review that the Legislature set forth in the West Virginia Administrative Procedures Act (APA) for appeals from administrative agencies to circuit court courts prior to the creation of the ICA.[4] And in this

---

[4]The 1964 and 1998 versions of West Virginia Code § 29A-5-4(g) were identical and provided:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

     (1) In violation of constitutional or statutory provisions;

11

regard we have recognized that "our review of the circuit court's ruling on a matter subject to the Administrative Procedures Act is governed by the same statutory standards of review employed by the trial court." *Nesselroad v. State Consol. Pub. Ret. Bd.*, 225 W. Va. 397, 399, 693 S.E.2d 471, 473 (2010) (per curiam) (citing *Martin v. Randolph County Bd. of Educ.* 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995); W. Va. Code § 29A–5–4 (2007)). Thus "[o]n appeal, this Court review[ed] the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency." *Webb v. W. Va. Bd. of Med.*, 212 W. Va. 149, 155, 569 S.E.2d 225, 231 (2002). We summarized this standard of review in Syllabus Point 1 of *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996):

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

----

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We believe that an identical approach governs our review of appeals to this Court from the ICA addressing BOR decisions.

"[T]his Court has held that it is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law." *Charleston Gazette v. Smithers*, 232 W. Va. 449, 467, 752 S.E.2d 603, 621 (2013). This includes familiarity with the rules of statutory construction. *See* Syl. Pt. 4, *Twentieth St. Bank v. Jacobs*, 74 W. Va. 525, 82 S.E. 320 (1914) ("The Legislature is presumed to know the rules and principles of construction adopted by the courts."). We may, therefore, presume that when it legislates, the Legislature "is aware of judicial interpretations of existing statutes when it passes new laws[,]" *United States v. Place*, 693 F.3d 219, 229 (1st Cir. 2012), including past judicial practices under those statutes. *See In re Egebjerg*, 574 F.3d 1045, 1050 (9th Cir. 2009) ("[W]e presume that when Congress legislates, it is aware of past judicial interpretations and practices."). Hence, we presume that the Legislature was aware of our use of the language contained in West Virginia Code § 29A-5-4(g) as providing us our standard of review on appeal in administrative appeal cases—statutory language the Legislature basically reiterated in West Virginia Code § 23-5-12a(b). "And when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006) (quoting *Bragdon v.*

13

*Abbott*, 524 U.S. 624, 645 (1998)); *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). Consequently, since the language in West Virginia Code § 29A-5-4 provided us our standard of review for administrative appeals from circuit court, we believe the Legislature's adoption of the practically identical language in West Virginia Code § 23-12-5a necessarily provides us our standard of review on appeal for reviewing ICA decisions addressing BOR orders. Accordingly, we hold that on appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Having set forth the standard of review governing this appeal, we now turn to the merits of the parties' arguments.

## III. Discussion

The Petitioner claims that the ICA erred in affirming the BOR's decision to apportion in his case. We agree.

The controlling statute in this case, West Virginia Code 23-4-9b (2003) provides:

> Where an employee has a *definitely ascertainable impairment* resulting from an occupational or a nonoccupational injury, disease or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one, article three of this chapter, the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment. Nothing in this section requires that the degree of the preexisting impairment be *definitely ascertained* or rated prior to the injury received in the course of and resulting from the employee's employment or that benefits must have been granted or paid for the preexisting impairment. The degree of the preexisting impairment may be established at any time by competent medical or other evidence. Notwithstanding the foregoing provisions of this section, if the *definitely ascertainable preexisting impairment* resulted from an injury or disease previously held compensable and the impairment had not been rated, benefits for the impairment shall be payable to the claimant by or charged to the employer in whose employ the injury or disease occurred. The employee shall also receive the difference, if any, in the benefit rate applicable in the more recent claim and the prior claim.

(emphasis added). The ICA concluded that under this section the terms "'definitely ascertainable' and 'definitely ascertained' refer to the existence of a preexisting condition, and not to the precise degree of impairment to be apportioned." *Duff*, 247 W. Va. at 556, 882 S.E.2d at 922. This conclusion is erroneous because it is contrary to the plain language of the statute. West Virginia Code § 23-4-9b requires both proof of a preexisting condition(s) and proof of "a definitely ascertainable impairment resulting from" the preexisting condition for the disability to be apportioned.[5]

In addressing the meaning of any statute, it is our duty to effectuate the Legislature's intent in passing the statute. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Work. Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). "That intention is to be garnered first and foremost from the language the legislature uses in the statute." *Freeland v. Marshall*, 249 W. Va. 151, ___, 895 S.E.2d 6, 13 (2023). In short, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the

---

[5]While the ICA and the BOR relied on several of our memorandum decisions to support the BOR's judgment, none of these memorandum decisions directly addressed the precise questions presented in this appeal. "'[I]t is beyond debate that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."'" *Frazier v. Burcker*, 248 W. Va. 21, 27, 886 S.E.2d 356, 362 (2023) (quoting *Ret. Plans Committee v. Jander*, 140 S. Ct. 592, 597 (2020) (per curiam) (Gorsuch, J., concurring) (quoting *Webster v. Fall*, 266 U.S. 507, 511(1925)).

16

statute in accordance with the legislative intent therein clearly expressed." Syl. Pt. 1, *Jarrell v. State Work. Comp. Comm'r*, 152 W. Va. 418, 163 S.E.2d 798 (1968).

West Virginia Code § 23-4-6(i) (2005), provides that the "Workers' Compensation Commission shall adopt standards for the evaluation of claimants and the determination of a claimant's degree of whole body medical impairment." These standards are set out in the West Virginia Code of State Rules § 85-20-65.1 (2006):

> Except as provided for in section 66 of this Rule, on and after the effective date of this rule all evaluations, examinations, reports, and opinions with regard to the degree of permanent whole body medical impairment which an injured worker has suffered shall be conducted and composed in accordance with the "Guides to the Evaluation of Permanent Impairment," (4th ed. 1993), as published by the American Medical Association.

This administrative rule goes on to state that:

> If in any particular claim, the examiner is of the opinion that the Guides or the section 64 substitutes cannot be appropriately applied or that an impairment guide established by a recognized medical specialty group may be more appropriately applied, then the examiner's report *must* document and explain the basis for that opinion. Deviations from the requirements of the Guides or the section 6 [sic] substitutes shall not be the basis for excluding evidence from consideration. Rather, in any such instance such deviations shall be considered in determining the weight that will be given to that evidence . . . .

*Id*. (emphasis added).

17

To that end, we find that West Virginia Code § 23-4-9b is clear and unambiguous. West Virginia Code § 23-4-9b speaks not in terms of "*condition(s)*," but in terms of "*impairment,*" which includes, but is broader than, condition. While proof of a preexisting condition is necessary to apportionment, it is not itself sufficient. There must be proof of the degree of "a definitely ascertainable impairment." We believe that under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).[6] *See, e.g.,*

---

[6]Courts have offered several convincing rationales for allocating the burden of proof in an apportionment case to the employer:

> First, apportionment is "an exception to the general rule of compensability," so once an employee has established entitlement to compensability, it should be the employer's burden to demonstrate that an exception applies. *See Cowin & Co. v. Medina*, 860 P.2d 535, 537–38 (Colo. App. 1992). Second, the employer should bear the burden of proof because it is the party that will benefit from a finding of apportionment. *See Deschenes v. Transco, Inc.*, 288 Conn. 303, 953 A.2d 13, 25 n.18 (2008); *see also Cowin*, 860 P.2d at 538 (explaining that if an employee has established entitlement to compensation and there was no evidence of a non-occupational disease, then the default position would be no apportionment; the employer must therefore show the existence of a non-industrial disease for apportionment to be considered); *cf. Koesling v. Basamakis*, 539 P.2d 1043, 1046 (Utah 1975) (explaining that the "proponent of a proposition" generally has

18

*Youngblood v. Ralph M. Parsons Co.*, 260 So. 2d 188, 190 (Miss. 1972) ("Having established a compensable injury and its continuance, the burden of proof was upon the employer-carrier to show not only a pre-existing infirmity which contributed to the results following the injury, but also the degree to which it contributed to the permanent disability.").

the burden of production and persuasion). Third, apportionment is comparable to the tort concept of comparative negligence, on which the defendant carries the burden of proof. *See Cowin*, 860 P.2d at 538–39. *See generally* 65A C.J.S. *Negligence* § 790 (March 2023 update) ("Comparative negligence is an affirmative defense, and the party asserting the defense bears the burden of proving that the negligence of the other party was a cause in fact of the accident."). And finally, public policy supports placing the burden of proof on the employer: issues of apportionment can be unusually complicated because of the difficulty in attributing and apportioning disability among various causes, so it should be 'the employer whose working conditions have admittedly caused harm to the employee' who should bear the burden of "medical imprecision" inherent in the apportionment analysis. *See Cowin*, 860 P.2d at 538; *cf. Walls v. Hodo Chevrolet Co.*, 302 So. 2d 862, 865–66 (Miss. 1974) (concluding that it was appropriate to place the burden on the employer to not only prove the existence of a pre-existing condition for purposes of apportionment but to present medical evidence that the pre-existing disease contributed to the employee's disability).

*Barker v. Labor Comm'n*, 528 P.3d 1260, 1265 (Utah Ct. App.), *cert. denied*, 534 P.3d 751 (Utah 2023).

To carry its burden, the Respondent points to the McKinney chiropractic records, MRI imaging, and Dr. Mukkamala's report. We will assume without deciding that the McKinney records and MRI imaging demonstrate a preexisting condition. But even with that, the Respondent still cannot prevail as it did not carry its additional burden of proving the degree of impairment to be attributed to any preexisting condition for purposes of apportionment.[7] To satisfy this later obligation, the Respondent looks to Dr. Mukkamala's report. We believe that Dr. Mukkamala's report in this regard lacks probative value. As such, it was not substantial evidence supporting the BOR's decision thus making the BOR's decision clearly wrong. Moreover, Dr, Mukkamala's 50-50 apportionment is definitionally arbitrary. Consequently, the ICA necessarily erred in affirming the BOR in this case.

It has been recognized that "most of the probative value of a medical opinion comes from its reasoning." *Nieves-Rodriguez v. Peake*, 22 Vet. App. 295, 304 (2008); *cf. Kosik v. Dir., Off. of Work. Comp. Programs*, 50 F. App'x 509, 512 n.7 (3d Cir. 2002) ("[A] non-treating doctor's opinion must be well supported and reasoned. A conclusory medical opinion will not suffice."). Medical reports without reasoning and rationale are conclusory and perforce lack probative value. *See In the Matter of the Compensation of*

---

[7]As the *AMA Guide*s note, radiographic changes do not necessarily reflect impairment: "[R]oentgenographic evidence of aging changes in the spine, called osteoarthritis, are found in 40% of people by age 35 years, and there is a poor correlation with symptoms." *Id*. at 99 (footnote omitted).

*Moe,* 606 P.2d 644, 646 (Or. Ct. App. 1980) (refusing to attribute "much weight" to a physician's "bare conclusion" as to causation in a workers' compensation case); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by A[dministrative] L[aw] J[udges]."). These recognitions are reflected by West Virginia Code of State Rules § 85-20-66 (2006) which provides, in pertinent part:

> 66.1 The evidentiary weight to be given to a report will be determined by how well it demonstrates that the evaluation and examination that it memorializes were conducted in accordance with the applicable Guides and that the opinion with regard to the degree of permanent whole body medical impairment suffered by an injured worker was arrived at and composed in accordance with the requirements of the applicable Guides.
>
> . . .
>
> 66.4 To the extent that factors other than the compensable injury may be affecting the injured worker's whole body medical impairment, the opinion stated in the report must, to the extent medically possible, determine the contribution of those other impairments whether resulting from an occupational or a nonoccupational injury, disease, or any other cause.

We read these subsections together as a cohesive whole. *See, e.g., State ex rel. McGraw v. W. Va. Ethics Comm'n*, 200 W. Va. 723, 727, 490 S.E.2d 812, 816 (1997) ("Every part of a statute must be construed in connection with the whole, so as to make all

21

parts harmonize if possible.").[8] When read together, subsections 66.1 and 66.4 provide that the evidentiary weight to be afforded to an apportionment decision in a medical report in a West Virginia Code § 23-4-9b apportionment case is a function of the reasoning and rationale the medical expert employs in determining that apportionment is warranted. *See, e.g., Ashley v. Work. Comp. Appeals Bd*., 43 Cal. Rptr. 2d 589, 592–93 (Ct. App. 1995) ("The medical opinion relied on for making apportionment determinations cannot be speculative, and must disclose familiarity with the basis for apportionment. It must describe in detail the exact nature of the disability to which apportionment is sought, and the basis for the opinion.").

In this case, the entirety of Dr. Mukkamala's report regarding apportionment provided:

> Please note that the 25% whole person Impairment is resulting from the preexisting degenerative spondyloarthropathy as well as the compensable injury of 6/15/2020.
>
> I will apportion Impairment and allocate 12% to the preexisting degenerative spondyloarthropathy and 13% to the compensable injury of 6/15/2020.

---

[8]"'[I]t is generally accepted that statutes and administrative regulations are governed by the same rules of construction.'" *Brickstreet Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 240 W. Va. 414, 426 n.18, 813 S.E.2d 67, 79 n.18 (2018) (quoting *W. Va. Racing Comm'n v. Reynolds*, 236 W. Va. 398, 402, 780 S.E.2d 664, 668 (2015) (per curiam) (quotations and citation omitted)); *accord Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017) (quoting *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) (citation omitted)) ("It is well established that '[t]he rules of statutory construction apply when interpreting an agency regulation.'").

Dr. Mukkamala's report plainly lacks any reasoning and rationale supporting or explaining his decision to apportion, especially in a 50-50 proportion. "[T]o be substantial evidence, a medical report must indicate the reasoning behind the doctor's opinion[.]" 3 *Modern Workers Compensation* § 306:14 n.82 (Westlaw Nov. 2023 update) (citing *State Comp. Ins. Fund v. Work. Comp. Appeals Bd.*, 53 Cal. Rptr.3d 268 (Ct. App. 2007)). Dr. Mukkamala's *ipse dixit* opinion lacks probative value and does not constitute substantial evidence.

Moreover, Dr. Mukkamala's unexplained 50-50 apportionment is arbitrary. "'A decision is arbitrary if it is without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards.'" *Painter v. Ballard*, 237 W. Va. 502, 510, 788 S.E.2d 30, 38 (2016) (quoting *Deese v. S.C. State Bd. of Dentistry*, 332 S.E.2d 539, 541 (S.C. Ct. App. 1985)). We cannot approve of the practice of automatically selecting a 50-50 split in apportionment cases. *Cf. Stout v. North Dakota Work. Comp. Bureau*, 253 N.W.2d 429, 431 (N.D. 1977) ("We do not approve of this practice of arbitrarily selecting an apportionment figure of fifty percent in heart attack cases.").

On the other hand, Dr. Guberman's report thoroughly explained the basis for his decision not to apportion, applying the *AMA Guides*:

23

In my opinion, [the 25% Whole Person Impairment] should entirely be apportioned for [the June 15, 2020] injury. Although imaging studies do reveal evidence of degenerative joint and disc disease of the lumbar spine, which was at least in part present before the current injury, so far as can be determined, the claimant would not have qualified for any impairment rating using either the Range of Motion Model or Table 85-20-C before the current injury. He did have occasional pain in his lumbar spine but that did not radiate into his legs, and he did not have numbness, tingling or weakness of his legs due to the low back pain before the current injury and was only intermittent and did not cause ongoing significant interference with activities of daily living, functional limitations or interference with work. Therefore, in my opinion, the claimant would not have received any impairment rating in regards to the lumbar spine before the current injury. Furthermore, even if one were to attempt to apportion for any preexisting condition, there is no objective medical, logical rationale for determining any specific portion of the impairment to apportion for any preexisting conditions. Therefore, in my opinion, the claimant receives a 25 percent impairment of the whole person for this injury.

The claimant previously received a 30 percent impairment of the whole person for this injury based on an independent medical evaluation performed by Dr. Mukkamala dated 6/9/2021. At that time, he also recommended a 25 percent impairment of the whole person of the claimant's lumbar spine from Table 85-20-C. However, as stated in the sixth paragraph of page 9 of his report he allocated "12[%] to the preexisting degenerative spondyloarthropathy and 13[%] to the compensable injury of 6/15/2020." However, as mentioned above, there is no evidence the claimant would have had any impairment rating in regard to his lumbar spine before the current injury. Furthermore, degenerative spondyloarthropathy in and of itself would not entitle the claimant to any impairment rating using either the Range of Motion Model or Table 85-20-C. Furthermore, Dr. Mukkamala does not offer any rationale for why he split the impairment rating in half (and then rounded up from 12.5 to 13 percent impairment of the whole person for the injury).

24

Therefore, in my opinion, the entire 25 percent impairment of the whole person should be apportioned for this injury. Since the claimant has already received a 13 percent impairment of the whole person for this injury, I am recommending he receive an additional 12 percent impairment of the whole person for this injury in accordance with Rule 20, Section VII.

For all the above reasons, the judgment of the ICA must be reversed.[9]

## IV. Conclusion

The judgment of the Intermediate Court of Appeals of West Virginia is reversed, and this case is remanded to the West Virginia Workers' Compensation Board of Review to enter an order granting the Petitioner an additional 12% Permanent Partial Disability award for a total Permanent Partial Disability award of 25%.

Reversed and remanded with directions.

---

[9]We are not unmindful that West Virginia Code § 23-5-12a(d) (2022) permits the ICA, instead of affirming, reversing or modifying a BOR decision, to "upon motion of any party or upon its own motion, for good cause shown, to be set forth in the order of the court, remand the case to the Board of Review for the taking of such new, additional, or further evidence as in the opinion of the court [it] considers necessary for a full and complete development of the facts of the case." The ICA's opinion did not address this subsection and neither party before us does either. Therefore, we elect not to address it.